**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

FRANCY GRAHAM, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ANDROS FOODS USA, INC.

Defendant.

Case No. 2:25-cv-03561-AJR

**MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND (DKT. 31)**

**I.**

**INTRODUCTION**

On April 22, 2025, Plaintiff Francy Graham ("Plaintiff"), individually and on behalf of all others similarly situated, filed a Complaint (the "Complaint") against Defendant Andros Foods USA, Inc. ("Defendant") alleging causes of action for: (1) Violation of California's Consumers Legal Remedies Act (the "CLRA"); (2) Violation of California's False Advertising Law (the "FAL"); (3) Violation of California's Unfair Competition Law (the "UCL"); (4) Breach of Express Warranty (Cal. Com. Code § 2313); (5) Breach of Implied Warranty (Cal. Com. Code § 2314); and (6) Intentional Misrepresentation.  (Dkt. 1.)  On June 18, 2025,

Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Dkt. 23.)  However, instead of opposing the Motion to Dismiss, Plaintiff elected to file an amended complaint.  (Dkt. 30.)

On July 9, 2025, Plaintiff filed a First Amended Complaint ("FAC") against Defendant alleging causes of action for: (1) Violation of the CLRA; (2) Violation of the FAL; (3) Violation of the UCL; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Quasi Contract/Unjust Enrichment/Restitution.  (Dkt. 29.)  On July 23, 2025, Defendant filed a Motion to Dismiss Plaintiff's FAC, (Dkt. 31), as well as two requests for judicial notice.  (Dkts. 32, 33.)  On July 30, 2025, Defendant filed a Corrected Memorandum of Points & Authorities in Support of Defendant's Motion to Dismiss the FAC (the "Motion"), (Dkt. 37), as well as a Corrected Request for Judicial Notice (the "Request for Judicial Notice").[1]  (Dkt. 38.)  On August 20, 2025, Plaintiff filed an Opposition to the Motion (the "Opposition").  (Dkt. 39.)  On August 27, 2025, Defendant filed a Reply in Support of the Motion (the "Reply").  (Dkt. 40.)

For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss WITH LEAVE TO AMEND.  (Dkt. 31.)

## II.
## PLAINTIFF'S ALLEGATIONS IN THE FAC

Plaintiff makes the following allegations in support of her claims, which are assumed to be true for purposes of the Motion, except those contradicted by the

---

[1] Defendant's initial motion to dismiss exceeded the word limit under the Local Rules and therefore the parties stipulated that Defendant would file a corrected motion to dismiss and the hearing on the motion would be continued to allow 28 days' notice as required by the Local Rules. (Dkts. 34, 35.)  Similarly, Defendant's initial requests for judicial notice were missing page numbers on the exhibits as required by the Local Rules and therefore the parties stipulated that Defendant would file a corrected request for judicial notice.  (Id.)

2

facts of which the Court has taken judicial notice.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

Defendant is a Delaware corporation with its principal place of business in New Jersey.  (Dkt. 29 at 8.)  Defendant markets and distributes *Bonne Maman®* ("*Bonne Maman*") preserves and jellies.  (Id. at 3, 8.)  This action concerns the following preserve and jelly products: *Bonne Maman* Cherry Preserves, *Bonne Maman* Mixed Berries Preserves, *Bonne Maman* Muscat Grape Jelly, *Bonne Maman* Peach Preserves, *Bonne Maman* Raspberry Preserves, *Bonne Maman* Strawberry Preserves, and *Bonne Maman* Wild Blueberry Preserves (the "Products").  (Id. at 9.)  Defendant, through its labeling, packaging, and advertising of *Bonne Maman* products, intentionally misleads consumers into believing that all *Bonne Maman* preserves and jellies are exclusively made in France.  (Id. at 3.)  Specifically, the entire brand is named "*Bonne Maman*" – translating to "good mommy" in French, and used colloquially to mean "grandmother" or "granny" – and each *Bonne Maman* product is enclosed with a "Vichy print" lid (together, the "*French Representations*").  (Id. at 3.)  "Vichy" refers to the red and white checkered pattern, featured on the lid of each product.  (Id. at 3 n.1.)  The Vichy pattern was first mass produced in Vichy, France during the reign of Napoleon Bonaparte.  (Id.)  However, contrary to the *French Representations*, the Products are not exclusively made in France, but are instead sometimes made in Belgium.  (Id. at 4.)

Plaintiff, who resides in Los Angeles County, purchased *Bonne Maman* Wild Blueberry Preserves and *Bonne Maman* Raspberry Preserves in or about July 2024 at Whole Foods Market in Los Angeles, California.  (Id. at 8.)  Plaintiff saw and relied on the *French Representations*, reasonably believing that she was purchasing preserves that are exclusively made in France.  (Id.)  However, unbeknownst to

Plaintiff, the Products are not exclusively made in France, but are also made in Belgium.  (Id.)  Plaintiff would not have purchased the Products or would have paid significantly less for them had she known that they were not exclusively made in France.  (Id.)

For the products made in Belgium, Defendant does not clearly and affirmatively identify the geographic origin by stating on the consumer-facing front label – or even back label – "Product of Belgium."  (Id. at 4.)  Instead, the back label reads: "Produced by Materne Conflux S.A. – 1 Allee Des Cerisiers B-5151 – Floreffe – Belgium."  (Id. at 5.)  However, for products made in France, the front label includes a clear and affirmative statement that states "Product of France," while also including on the back label, "Produced by Andros 46130 Biars – France."  (Id.)  Additionally, even on some products produced in France, like the miniature jars, Defendant cannot fit a "Product of France" statement on the front label, but includes that clear statement on the back label.  (Id. at 6.)

Defendant intentionally reinforces the perception that the Products are exclusively made in France by uniformly packaging the Products with its Vichy print lid and marketing the Products with additional information to further reinforce the *French Representations*, including selling a "Taste of France" gift set, and partnering with Taste France Magazine, "an initiative of the French Ministry of Agriculture and Food."  (Id. at 11.)  Defendant deceptively advertises the Products in order to exploit strong consumer sentiment for French-made goods.  (Id. at 12.)  Plaintiff brings this action on behalf of herself and California citizens who purchased any of the Products within the relevant statute of limitations period and all persons who, within the relevant statute of limitations period, purchased any of the Products for personal, family, or household purposes, in the State of California.  (Id. at 17.)

\\

4

### III.

### REQUEST FOR JUDICIAL NOTICE

Defendant requests judicial notice of twelve documents:

1. **Exhibit 1:** A true and correct copy of a label for *Bonne Maman*® brand preserves and jellies product produced in France.

2. **Exhibit 2:** A true and correct copy of a label for *Bonne Maman*® Muscat Grape Jelly produced in Belgium

3. **Exhibit 3:** A true and correct copy of a label for *Bonne Maman*® Wild Blueberry Preserves produced in Belgium.

4. **Exhibit 4:** A true and correct copy of a label for *Bonne Maman*® Raspberry Preserves produced in Belgium.

5. **Exhibit 5:** A true and correct copy of a label for *Bonne Maman*® Strawberry Preserves produced in Belgium.

6. **Exhibit 6:** A true and correct copy of a label for *Bonne Maman*® Cherry Preserves produced in Belgium.

7. **Exhibit 7:** A true and correct copy of a label for *Bonne Maman*® Mixed Berries Preserves produced in Belgium.

8. **Exhibit 8:** A true and correct copy of a label for *Bonne Maman*® Peach Preserves produced in Belgium.

9. **Exhibit 9:** A true and correct copy of U.S. Trademark Registration No. 4,103,670 for *Bonne Maman*® in Int. Cls. 29, 30, and 32 registered Feb. 28, 2012.

10. **Exhibit 10:** A true and correct copy of U.S. Trademark Registration No. 6,988,036 for *Bonne Maman*® in Int. Cls. 5, 29, 30, and 32 registered Feb. 28, 2023.

11. **Exhibit 11:** A true and correct copy of U.S. Trademark Registration No. 1,308,179 for *Bonne Maman*® in Int. Cls. 29 and 30 registered Dec. 4, 1984.

12. **Exhibit 12:** An archived web page of the British Broadcasting Corp.

("BBC") available at

https://www.bbc.co.uk/languages/european_languages/countries/belgium.sht

ml.

(Dkt. 38.)

Exhibits 1 through 8 are properly subject to judicial notice because they are incorporated by reference into the FAC and Defendant establishes their authenticity through the declaration of Sylvain Dronet ("Dronet Decl."), Vice President of Defendant.  See Knievel v. ESPN, 393 F.3d 1086, 1076 (9th Cir. 2005); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  "Courts regularly take judicial notice of images of product packaging when evaluating the sufficiency of false advertising claims."  La Barbera v. Ole Mexican Foods Inc., 2023 WL 4162348, at *3 (C.D. Cal. May 18, 2023), appeal dismissed sub nom. LaBarbera v. Ole Mexican Foods, Inc., 2023 WL 11823366 (9th Cir. Sept. 27, 2023).  Moreover, the authenticity of Exhibits 1 through 8 is not disputed and the Request for Judicial Notice is unopposed.  (Dkt. 39 at 5 n.2.)  Thus, the Court GRANTS Defendant's Request for Judicial Notice as to Exhibits 1 through 8.

Exhibits 9 through 11 are government records that are not subject to reasonable dispute pursuant to Federal Rule of Evidence 201(b).  Similarly, Exhibit 12 is a government web page that is not subject to reasonable dispute.  As such, the Court also GRANTS Defendant's Request for Judicial Notice as to Exhibits 9 through 12.  See Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks and brackets omitted)).

\\

\\

6

# IV.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted).  Additionally, the heightened pleading requirements of Rule 9(b) apply to "averments" of fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003).  Specifically, allegations of fraud must be stated with particularity, whereas malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

The Court must accept as true all non-conclusory factual allegations contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. See Steinle v. Cty. & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019).  "Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (footnote omitted).  The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition

1    to a defendant's motion to dismiss.").

2         The Court may not dismiss a complaint without leave to amend unless "it is

3    absolutely clear that the deficiencies of the complaint could not be cured by

4    amendment." Akhtar, 698 F.3d at 1212 (internal quotation marks omitted); see also

5    Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) ("[A] district court

6    should grant leave to amend even if no request to amend the pleading was made,

7    unless it determines that the pleading could not possibly be cured by the allegation

8    of other facts." (internal quotations omitted)).  However, "a district court has broad

9    discretion to grant or deny leave to amend, particularly where the court has already

10   given a plaintiff one or more opportunities to amend his complaint to allege federal

11   claims." Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980); accord Cafasso, U.S.

12   ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011)

13   ("Further, the district court's discretion to deny leave to amend is particularly broad

14   where plaintiff has previously amended the complaint." (internal quotation marks

15   and brackets omitted)).

16        Under Federal Rule of Civil Procedure 12(f), a "court may strike from a

17   pleading an insufficient defense or any redundant, immaterial, impertinent, or

18   scandalous matter."  The purpose of striking such matter is to avoid wasting "time

19   and money that must arise from litigating spurious issues by dispensing with those

20   issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th

21   Cir. 2010) (internal quotation marks and ellipses omitted).  A motion to strike is

22   generally disfavored and should only be granted if "the matter to be stricken clearly

23   could have no possible bearing on the subject of the litigation." Holmes v. Elec.

24   Document Processing, Inc., 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (internal

25   question marks omitted).  "If there is any doubt whether the portion to be stricken

26   might bear on an issue in the litigation, the court should deny the motion." Id.

27   (internal quotation marks omitted).  "Ultimately, whether to grant a motion to strike

28   lies within the sound discretion of the district court." Cruz v. Bank of N.Y. Mellon,

2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012).

**IV.**

**DISCUSSION**

A.    **Plaintiff Failed To Plausibly Allege That A Reasonable Consumer**
      **Would Be Deceived About The Products' Country Of Origin.**

To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege that
the defendant's purported misrepresentations are likely to deceive a reasonable
consumer.  See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008)
(explaining that unless the advertisement at issue targets a particularly vulnerable
group, courts must evaluate claims for false or misleading advertising from the
perspective of a reasonable consumer); Reid v. Johnson & Johnson, 780 F.3d 952,
958 (9th Cir. 2015) ("It is true that violations of UCL, FAL, and CLRA are
evaluated from the vantage point of a 'reasonable consumer.'").  Under the
reasonable consumer standard, a plaintiff must plausibly allege "a probability that a
significant portion of the general consuming public or of targeted consumers, acting
reasonably in the circumstances, could be misled." Ebner v. Fresh, Inc., 838 F.3d
958, 965 (9th Cir. 2016) (internal quotation marks omitted).  "This requires more
than a mere possibility that [the defendant's] label might conceivably be
misunderstood by some few consumers viewing it in an unreasonable manner." Id.
(internal quotation marks omitted).

"[W]hether a business practice is deceptive will usually be a question of fact
not appropriate for decision on [a motion to dismiss]." Williams, 552 F.3d at 938.
However, dismissal is appropriate where the advertising or labeling itself makes it
"impossible for the plaintiff to prove that a reasonable consumer was likely to be
deceived." Id. at 939.  "Moreover, there has been an ever-increasing number of
cases (even within the Ninth Circuit) in which a motion to dismiss was found to be
appropriately granted where the issue was whether a product label is (or could be)

9

deceptive or misleading to a reasonable consumer." <u>Culver v. Unilever United States, Inc.</u>, 2021 WL 2943937, at *4 (C.D. Cal. June 14, 2021) (citing cases). Indeed, "where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." <u>Hairston v. S. Beach Beverage Co.</u>, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (citing cases).

Here, Plaintiff alleges that Defendant misleads consumers that the Products are exclusively made in France through what Plaintiff calls the *French Representations*. (Dkt. 29 at 3.) According to the FAC, the *French Representations* are: (1) the fact that the entire brand is named "*Bonne Maman*" – translating to "good mommy" in French, and used colloquially to mean "grandmother" or "granny"; and (2) each jar of the Products is enclosed with a "Vichy check" lid, which is a red and white checkered pattern first mass produced in Vichy, France during the reign of Napolean Bonaparte. (<u>Id.</u> at 3 & n.1.) Below are images from the FAC showing the brand name "*Bonne Maman*" and the "Vichy check" lids on the Products:




(Dkt. 29 at 5.) The FAC also alleges that Defendant's advertising of the Products reinforces the perception that the Products are exclusively made in France. (<u>Id.</u> at 11.) The Court will address each of the allegedly misleading representations below.

As an initial matter, many courts have recognized that a reasonable consumer would "not be misled [as to the country of origin] by the presence of some foreign language words or phrases on the Products." La Barbera, 2023 WL 4162348, at *14 (citing cases). Indeed, "[t]he mere presence of words in a foreign language is insufficient to mislead a reasonable consumer" as to the country where the products were made. Eshelby v. L'Oreal USA, Inc., 664 F. Supp. 3d 417, 425 (S.D.N.Y. 2023) (citing cases). These courts have explained that the reasonable consumer "has a basic understanding that there is such a thing as global capitalism, in which markets for goods and services operate across borders," and therefore "it is an inherently unreasonable assumption that just because a food clearly originates from a foreign country, . . . that *ipso facto* it must be made in that country." La Barbera, 2023 WL 4162348, at *14.

For example, in Culver v. Unilever United States, Inc., the court granted a motion to dismiss misleading labeling claims based on the use of French words on mustard jars that were made in Canada. See Culver, 2021 WL 2943937, at *1, *7-9. The Culver court explained its reasoning as follows:

> [T]he allegedly misleading words do not by themselves actually indicate the country where the Products are manufactured. While the front labels contain two words in the French language – which are prepositions (*i.e.* "depuis" and "que") – and two proper nouns (*i.e.* "Paris" and "Maille"), there are no concomitant words or references to a geographic source or origin. For example, there are no phrases such as "from Paris (*i.e.* "de Paris"), "product of France," or even "imported." All of the remaining many words on the front label are in English. Likewise, the translation of the French words into English does not suggest the place of manufacture. "Depuis 1747" means "since 1747" and "que Maille" means "that (or than) Maille." Thus, the pleadings do not delineate a basis, other than unfounded supposition, for a consumer to believe that the Products were made in France.

11

Id. at *8 (footnote omitted).  Thus, the Culver court concluded that the plaintiff had failed to state a claim that the labeling on the mustard jars was misleading as to the country of origin.  Id. at *9.

Similarly here, the label on the Products contains the French phrase "*Bonne Maman*," which translates to "good mommy," (Dkt. 29 at 3), and does not reference or suggest a geographic source, origin, or place of manufacture.[2]  See Culver, 2021 WL 2943937, at *8; La Barbera, 2023 WL 4162348, at *14.  Also similar to Culver, all of the other words on the label of the Products are in English.  See Culver, 2021 WL 2943937, at *8; (Dkts. 38-1, 38-2, 38-3, 38-4, 38-5, 38-7, 38-8).  The mere use of a single French phrase is particularly unlikely to deceive a reasonable consumer about the Products' country of origin because French is an official language for both France and Belgium, the two nations where the Products are produced.  See Culver, 2021 WL 10382839, at *9 ("[I]t must be noted that French is the official language of dozens of countries other than France, including Belgium, Ivory Coast, Luxembourg, Vanuatu and, of course, Canada.").

Moreover, the phrase "*Bonne Maman*" is a registered trademark, (Dkts. 38-9, 38-10, 38-11), which further undermines Plaintiff's claim that the phrase is misleading because "a prerequisite to acquiring a trademark registration in the United States[] [is that the] mark must not be deceptively misdescriptive of the product."  Rooney v. Cumberland Packing Corp., 2012 WL 1512106, at *5 (S.D.

---

[2] Plaintiff relies on Sinatro v. Barilla Am., Inc., 635 F. Supp. 3d 858, 878 (N.D. Cal. 2022), and Hesse v. Godiva Chocolatier, Inc., 463 F. Supp. 3d 453, 467 (S.D.N.Y. 2020), (Dkt. 39 at 11), but in both cases, the allegedly misleading language referenced or suggested a geographic source, origin, or place of manufacture.  See Sinatro, 635 F. Supp. 3d at 878 (finding that use of the trademark "ITALY'S #1 BRAND OF PASTA" could mislead a reasonable consumer into believing that Barilla Pasta was made in Italy); Hesse, 463 F. Supp. 3d at 467 (finding that a reasonable consumer could be misled into believing Godiva chocolates are made in Belgium based on the trademarked "Belgium 1926" representation on the front label).

12

Cal. Apr. 16, 2012) (granting motion to dismiss misleading labeling claims in part because trademarked phrase "Sugar in the Raw" was not deceptively misdescriptive).  Indeed, the <u>Culver</u> court also relied in part on the fact that the allegedly misleading phase was a registered trademark:

> It cannot be doubted that Defendant has the right to utilize its trademarks and other authorized words which correctly indicate that the Products belong to the Maille brand. Thus, Defendant cannot be held to be misleading the consuming public when it utilized either its trademarks (*i.e.* "Maille" or "Que Maille") or other words or phrases which are associated with its merchandising history (*i.e.* "Paris" and "Depuis 1747" – reflecting the opening in 1747 of its first boutique establishment in Paris).

<u>Culver</u>, 2021 WL 2943937, at *8; <u>see also</u> <u>Myers-Taylor v. Ornua Foods N. Am., Inc.</u>, 2019 WL 424703, at *4 (S.D. Cal. Feb. 4, 2019) (trademarked phrase "Milk From Grass-Fed Cows" was not misleading); <u>McKinnis v. Kellogg USA</u>, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (trademarked name "FROOT LOOPS" was not misleading).  Thus, the Court concludes that Plaintiff's reliance on the language on the front label of the Products is insufficient to plausibly allege that a reasonable consumer would be deceived about the country of origin of the Products. <u>See</u> <u>Culver</u>, 2021 WL 2943937, at *9 ("In sum, the Court finds that the front labels of the Purchased Mustard Products do not contain sufficiently deceptive features as to the place of origin of the condiments."); <u>Govea v. Gruma Corp.</u>, 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021) ("The mere fact that the Packaging includes words in Spanish, including the vague and meaningless phrase "a piece of Mexico," is insufficient to support Plaintiffs' claims. The Packaging would not likely deceive a significant portion of the general public into believing that the Tortillas are manufactured in Mexico.").

Plaintiff contends that the language on the front label of the Products in combination with the use of the "Vichy check" on the lids of the Products creates

an overall brand image that could deceive a reasonable consumer about the country of origin.  (Dkt. 29 at 3 & n.1.)  However, the FAC does not contain facts that plausibly support the inference that a reasonable consumer would associate the "Vichy check" pattern with products made in France.  Instead, the FAC asserts in a conclusory manner that the check pattern is "known globally" as "Vichy check" and that this pattern was first mass produced in Vichy, France during the reign of Napoleon Bonaporte.  (Id.)  But to support this assertion, the FAC cites to an article from Vogue Mexico & Latina America which explains that "the original manufacture of this fabric originated in Malaysia" and "was imported to England under Elizabeth I."  (Id. (citing Laura Tortora, <u>Vichy checks and the story behind the eternal summer print</u>, Vogue Mexico & Latin America, July 1, 2022, <u>www.vogue.mx/moda/articulo/cuadros-vichy-historia-del-estampado-de-moda-del-verano</u>).)  The article explains that "Vichy check," more popularly known as "Gingham print," was first popularized in the United States by movie stars such as Joan Crawford, Katharine Hepburn, and Brigitte Bardot, and later famously worn by Lady Diana, the Princess of Wales.  (Tortora, <u>Vichy checks and the story behind the eternal summer print</u>, <u>www.vogue.mx/moda/articulo/cuadros-vichy-historia-del-estampado-de-moda-del-verano</u>.)  Indeed, the whole point of the article seems to be that Gingham print has a timeless international appeal.  (Id.)

Thus, the Court concludes that the use of the "Vichy check" on the lids of the Products, in combination with the brand name "*Bonne Maman*," is insufficient to plausibly suggest a reasonable consumer would be misled about the country of origin.  See <u>Maeda v. Kennedy Endeavors, Inc.</u>, 407 F. Supp. 3d 953, 974 (D. Haw. 2019) ("[T]he California consumer protection claims presented here fall into the exceptional category of cases susceptible to dismissal because a reasonable consumer would not be misled into believing that the Hawaiian Snacks originate from Hawai'i due to the mere inclusion of the word 'Hawaiian' plus Hawai'i-related imagery on the snacks' packaging."); <u>Romero v. Tropicale Foods, LLC</u>,

14

2021 WL 6751908, at *6 (C.D. Cal. Dec. 22, 2021) ("Neither the cartoon woman nor the cartoon cart includes colors that hint at an association with Mexico (such as the Mexican flag colors). But even if they did, they would remain simple embellishments that do not communicate to any reasonable consumer that the product is, in fact, made in Mexico."); La Barbera, 2023 WL 4162348, at *15 ("But no reasonable consumer would think the Mexican flag imagery on the Products suggests that they must be made in Mexico, for these are highly stylized 'flags,' decidedly unofficial in nature: they adopt the Mexican tricolor, with images of wheat or corn in lieu of the national coat of arms."); Govea, 2021 WL 1557748, at *4 ("[I]f the packaging merely evokes the spirit of a generalized location or culture in a vague and nonspecific manner, such claims are properly dismissed at the 12(b)(6) stage.").

Finally, Plaintiff alleges that Defendant's advertising of the Products reinforces the perception that the Products are exclusively made in France. (Dkt. 29 at 11.) Specifically, Plaintiff alleges that "the Products were marketed or shelved with additional information to further reinforce the *French Representations*, including selling a 'Taste of France' gift set, and partnering with Taste France Magazine."[3] (Id.) However, Plaintiff fails to allege that any of the varieties of the Products sold in the "Taste of France" gift set or marketed in Taste France Magazine were not actually produced in France. (Id. at 11-12.) Regardless, even assuming that Defendant's advertising created some ambiguity about the country of origin of the Products, the Court must "consider[] other information readily available to the consumer that could easily resolve the alleged ambiguity." Moore

---

[3] The FAC includes a photo of a store shelf at the retailer World Market showing the Products on a shelf reserved for French products. (Dkt. 29 at 4.) However, Plaintiff does not allege that Defendant directed the retailer to display the Products in this manner and instead simply alleges that this example of displaying the Products is "[i]ndicative of the materiality and consumer perception of the *French Representations*." (Id.)

v. Trader Joe's Co., 4 F.4th 874, 882 (9th Cir. 2021).  Indeed, the Ninth Circuit has explained that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used."  Id. (internal quotation marks omitted).

Here, a reasonable consumer who was trying to determine the country of origin of the Products would be able to read the back label which clearly discloses the address where the specific jar of the product was produced.  (Dkt. 29 at 5.)  Indeed, the FAC admits that the varieties of the Products that are produced in Belgium state on the back label, "Produced by Materne Conflux S.A. – 1 Allee Des Cerisiers B-5151 – Floreffe – Belgium."  (Id.)  Similarly, the varieties of the Products that are produced in France state on the back label, "Produced by Andros 46130 Biars – France."  (Id.)  Below are images of front and back labels from the FAC:







(Id. at 6.)  Plaintiff contends that the text of the address is "difficult to read because it appears in small, nondescript print, and is not a standalone statement," (id.), but the text is printed in the same typeface and font size as the ingredient list and

refrigeration instructions, which are legible and actually larger than the nutrition facts.[4]  (Id. at 5-6.)  Indeed, the disclosure of the address where the specific product is produced complies with federal labeling laws.  See 21 U.S.C. § 343(e)(1) (requiring the label to include "the name and place of business of the manufacturer, packer, or distributor" of the product).  Moreover, federal labeling law prohibits states from imposing requirements "not identical to" the requirements under federal law.  21 U.S.C. § 343-1(a)(2).  Therefore, this Court cannot interpret California law (the UCL, FAL, and CLRA) as imposing a labeling requirement inconsistent with federal law.[5]

Ultimately, when the Court considers all of the information available to consumers (the "*Bonne Maman*" trademark, the use of the "Vichy check" pattern on the lids, Defendant's advertising, and the disclosure of the address where the product is produced on the back label), the Court concludes that no reasonable consumer would be deceived about the Products' country of origin.  See La

---

[4] Plaintiff relies on Broomfield v. Craft Brew All., Inc., 2017 WL 3838453, at *7-8 (N.D. Cal. Sept. 1, 2017), reconsideration granted in part on other grounds, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017), for the proposition that the placement and language of a purported disclosure can render it ineffective.  (Dkt. 39 at 18.)  However, Broomfield is easily distinguished because the disclosure of where the beer was brewed was located on the label on the beer bottle inside of the packaging for six- and twelve-packs of beer, and therefore was not visible to the consumer at the time of purchase.  See Broomfield, 2017 WL 3838453, at *7.  The disclosures were also ambiguous because each label listed all five locations where the brand brews its beer, including "Kona, HI, Portland, OR, Woodinville, WA, Portsmouth, NH, and Memphis, TN."  Id. at *8.

[5] Plaintiff contends that the disclosure on the back label stating "Produced by Materne Conflux S.A. – 1 Allee Des Cerisiers B-5151 – Floreffe – Belgium" is not an "express statement" that the Products are made in Belgium and therefore Defendant should state "Product of Belgium" on the back label of the varieties of the Products made in Belgium.  (Dkt. 39 at 16-17.)  However, accepting this argument would mean imposing a labeling requirement inconsistent with federal law because 21 U.S.C. § 343(e)(1) only requires a product label to disclose "the name and place of business of the manufacturer, packer, or distributor" of the product.

17

Barbera, 2023 WL 4162348, at *19 ("No such individual would be so convinced of
the Mexican origin of the Products from their front labels that she would ignore the
back label. Thus, anyone who cared about whether the Products were made in
Mexico would read their back label and see for themselves they are made in the
United States."); Culver, 2021 WL 2943937, at *9 ("The two French words and the
two proper names on the front labels were either Defendant's trademarks or
referenced the history of the Maille brand. That is not enough to make the labels so
misleading that a reasonable consumer – who had a question as to the country of
origin of the Products – would not be expected to look at the full packaging for the
answer, which was clearly and correctly provided on the rear label."); Hodges v.
King's Hawaiian Bakery W., Inc., 2021 WL 5178826, at *6 (N.D. Cal. Nov. 8,
2021) ("The label plainly states, 'Est. 1950,' and 'Hilo, Hawaii,' providing a
reference to the company's historical origin. This is insufficient to establish that the
sweet rolls are still produced in Hawaii. Contrary to plaintiffs' argument, the
statement on the back label of defendant's packaging, 'Manufactured by: King's
Hawaiian Bakery West, Inc., 19161 Harborgate Way, Torrance, CA 90501,' is
plainly sufficient to tell consumers where the sweet rolls are produced.").

Plaintiff places heavy reliance on Shalikar v. Asahi Beer U.S.A., Inc., 2017
WL 9362139 (C.D. Cal. Oct. 16, 2017), to support her argument that the FAC
plausibly alleges a reasonable consumer would be deceived about the Products'
country of origin.  (Dkt. 39 at 12-13.)  In Shalikar, the plaintiffs alleged that the
product labeling on Asahi beer was deceptive as to the country of origin because
the beer was actually brewed in Canada while a reasonable consumer would believe
that the beer was brewed in Japan.  See Shalikar, Inc., 2017 WL 9362139, at *3.
Specifically, the plaintiffs alleged that "the overall brand image" of the beer was
misleading as to the country of origin based on the following features of the label
and packaging:  (1) the name "Asahi," which means "morning sun" in Japanese, is
translated into English; (2) the Japanese Katakana script which in Japanese is

pronounced "Asahi beer"; (3) the Japanese Katakana script which in Japanese means "Super Dry," is used; and (4) the Japanese Kanji characters which in Japanese are pronounced, "Karakuchi," and mean "dry taste," are used. Id. at *7. In addition to the foregoing features, it was undisputed that the label and packaging of the beer disclosed that the beer was brewed in Canada. Id. This statement appeared in all capital letters printed in a color different from that of the background in a font size that was smaller than that used for the English text and Japanese script on the labels. Id. It was also undisputed that the bottleneck labels were visible when the bottles were within the carton. Id.

Based on these facts, the Shalikar court concluded that the allegations were sufficient to state a claim for deceptive labeling and that the effect of the disclosure that the beer was brewed in Canada could not be determined as a matter of law on the then-existing record. Id. at *8. The Shalikar court explained that this conclusion was supported by survey evidence in the operative complaint showing that more than 86% of the demographically representative U.S. sample of over 1,000 adults who viewed the beer or its packaging believed that it was produced in Japan. Id. Thus, the Shalikar court concluded that the plaintiffs had "plausibly alleged a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." Id. (internal quotation marks omitted).

As an initial matter, the Court concludes that Shalikar is distinguishable because the label on the Asahi beer included extensive usage of prominently featured Japanese phrases, script, and characters. See Shalikar, Inc., 2017 WL 9362139, at *7. By contrast, here, the label on the Products contains only the brand name "Bonne Maman" in French, and all other text is in English. (Dkt. 29 at 3.) The only other indicium of French origin is the "Vichy check" lid, but as explained above, the FAC does not contain facts that plausibly support the inference that a reasonable consumer would associate the "Vichy check" pattern with products

made in France.  (Id. at 3 & n.1.)  Therefore, the conclusions of the Shalikar court were justified by a substantially more suggestive product label than has been alleged here.  See Govea, 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021) (distinguishing Shalikar because the product label at issue was substantially more suggestive than the product label at issue); Maeda, 407 F. Supp. 3d at 973 (same); Am. Achievement Corp. v. Jostens, Inc., 622 F. Supp. 3d 749, 768 n.12 (D. Minn. 2022) (same).  Moreover, the Shalikar court relied in part on survey evidence showing that more than 86% of the demographically representative U.S. sample of over 1,000 adults who viewed the beer or its packaging believed that it was produced in Japan.  See Shalikar, Inc., 2017 WL 9362139, at *8.  By contrast here, the FAC does not contain any survey evidence.  (Dkt. 29.)

Whereas the Shalikar court concluded that it could not determine as a matter of law the effect of the disclosure on the bottle neck that the beer was brewed in Canada, see Shalikar, Inc., 2017 WL 9362139, at *8, the Court here concludes that it must consider the disclosure of the address where the specific product was produced on the back label of the Products.  See McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1098 (9th Cir. 2023) ("[T]he front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label.").  It is worth pointing out that Shalikar was decided before the Ninth Circuit clarified in McGinity that where the front label of a product creates ambiguity, "the ambiguity can be resolved by reference to the back label."  Id. at 1099.  As explained above, the front label of the Products is not unambiguously deceptive as to the country of origin and does not even create ambiguity as to the country of origin.[6]  The Court has assumed that Plaintiff's

---

[6]  Plaintiff contends that "Defendant's overall brand image is *unambiguously* deceptive, which precludes any consideration of the back label."  (Dkt. 39 at 7.) However, Plaintiff fails to cite any case with similar facts finding unambiguous deception and instead argues that deception "is demonstrated by the undisputed fact that even World Market was deceived by the label." (Id. at 8.)  But Plaintiff has not

allegations about Defendant's advertising somehow create ambiguity and easily
concludes that any ambiguity is resolved by the disclosure of the address where the
product is produced on the back label.

Finally, the Court notes that the <u>Culver</u> court expressly disagreed with the
conclusions in <u>Shalikar</u>.  <u>See Culver</u>, 2021 WL 10382839, at *11 ("Simply stated,
this Court would disagree with both conclusions in <u>Shalikar</u>.").  The <u>Culver</u> court
explained that the beer bottle labels in <u>Shalikar</u> said "absolutely nothing about
where the beer was brewed" and therefore the only reason they suggested a
Japanese country of origin was because of the use of Japanese script on the
packaging.  <u>Id.</u>  The <u>Culver</u> court further explained that <u>Shalikar</u> "fails to explain
why the disclaimer on the bottleneck labels – which state in English (which
presumably a reasonable consumer would be able to read) that the product was
brewed and bottled in Canada – would not be sufficient to dispel the consumers'
unexplained belief that the beer was made in Japan."  <u>Id.</u>  Finally, the <u>Culver</u> court
observed that the <u>Shalikar</u> court appeared to have done "what the California and
federal courts have said one should not do, namely use a least sophisticated
consumer as the template for the reasonable consumer."  <u>Id.</u> (internal quotation
marks omitted.

In sum, the Court concludes that Plaintiff has failed to plausibly allege that a
reasonable consumer would be deceived as to the Products' country of origin.  As
set forth above, the label on the Products contains the French phrase "*Bonne
Maman*," which translates to "good mommy," (Dkt. 29 at 3), and does not reference
or suggest a geographic source, origin, or place of manufacture.  The fact that the
jar lids use a "Vichy check" pattern is insufficient because the FAC does not
contain sufficient facts that plausibly support the inference that a reasonable

established that World Market was deceived by the Products' front label and instead
has merely included a photo of a store shelf at a single store showing the Products on
a shelf reserved for French products.  (Dkt. 29 at 4.)

consumer would associate the "Vichy check" pattern with products made in France. (Id. at 3 & n.1.)  Defendant's advertising of the Products is also insufficient, (id. at 11-12), in light of the back label which clearly discloses the address where the specific product was produced.  (Id. at 5.)  Accordingly, Plaintiff's claims under the UCL, FAL, and CLRA are dismissed with leave to amend.

**B.    Plaintiff Failed To Sufficiently Plead _Scienter_.**

"Regardless of the title given to a particular claim, allegations grounded in fraud are subject to Rule 9(b)'s pleading requirements."  Tomek v. Apple Inc., 636 F. App'x 712, 713 (9th Cir. 2016).  Thus, the heightened pleading requirements of Rule 9(b) apply to Plaintiff's claims under the UCL, FAL, and CLRA, as well as Plaintiff's claims for negligent and intentional misrepresentation.  See id. ("Rule 9(b) applies to UCL and CLRA claims grounded in fraud." (internal quotation marks omitted)); Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014) ("Frenzel's first, second, and third causes of action, for violations of the CLRA, UCL, and FAL, all sound in fraud and are thus governed by Rule 9(b)'s heightened pleading standard."); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.").

Under Rule 9(b), "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."  Vess, 317 F.3d at 1106 (internal quotation marks omitted).  "For claims based on deceptive product packaging or labeling, many courts in California have applied a relatively straightforward test for the application of Rule 9(b): The 'who' is the defendant; the 'what' is the allegedly misleading packaging; the 'when' is the proposed class period during which time the packaging was deceptive; the 'where' is the packaging containing the allegedly misleading statement—or in the case of deceptive packaging, the packaging itself—and the 'how' is the plaintiff's

22

explanation for why the packaging is misleading." <u>Oh v. Catalina Snacks, Inc.</u>, 764
F. Supp. 3d 903, 913 (C.D. Cal. 2025) (internal quotation marks omitted); <u>accord</u>
<u>Matic v. United States Nutrition, Inc.</u>, 2019 WL 3084335, at *7 (C.D. Cal. Mar. 27,
2019).  In addition to alleging the who, what, when, where, and how of the fraud, a
plaintiff alleging deceptive product packaging or labeling must also sufficiently
allege that the defendant knew the representations at issue were misleading.  <u>See</u>
<u>Tomek</u>, 636 F. App'x at 713.

  Here, Plaintiff has alleged the who, what, when, where, and how as follows:

  **Who:**  Defendant.  (Dkt. 29 at 8.)

  **What:**  The "*French Representations*," which include the French brand
name, "*Bonne Maman*," and the use of red and white "Vichy print" on the lids of
each product.  (<u>Id.</u> at 3.)  The FAC also alleges that "the Products were marketed or
shelved with additional information to further reinforce the *French
Representations*."  (<u>Id.</u> at 11.)

  **When:**  The proposed class period is the relevant statute of limitations.  (<u>Id.</u>
at 17.)

  **Where:**  The proposed class covers all Products purchased in the State of
California.  (<u>Id.</u>)

  **How:**  Plaintiff alleges that through its labeling, packaging, and advertising
of the Products, Defendant intentionally misleads consumers into believing that all
*Bonne Maman* preserves and jellies are exclusively made in France.  (<u>Id.</u> at 3.)

  As set forth above, Plaintiff's allegations of the who, what, where, and how
are sufficient under Rule 9(b).  However, the Court questions whether Plaintiff has
sufficiently alleged the "when" requirement under Rule 9(b) by simply referring to
the relevant statute of limitations, without specific start or end dates for each cause
of action.  (<u>Id.</u> at 17.)  Indeed, "[s]ome district courts in this circuit have determined
that a complaint which states, 'during the applicable class period' and then defines
that period with a specific date(s), sufficiently satisfies the 'when' requirement

23

under Rule 9(b)." <u>Dawson v. Better Booch, LLC</u>, 716 F. Supp. 3d 949, 960 (S.D. Cal. 2024) (citing cases). "Other district courts in this circuit, however, have held that a plaintiff cannot satisfy the 'when' requirement under Rule 9(b) by simply alleging that plaintiff purchased the products during the specified class period." <u>Id.</u> (citing cases). In <u>Dawson v. Better Booch, LLC</u>, the court held that the plaintiff's reference to the relevant statute of limitations was insufficient to satisfy Rule 9(b) in light of the fact that the plaintiff did not specifically allege when she purchased the product. <u>See id.</u> ("Plaintiff's FAC fails to allege a start or end date to mark the class period. Because Plaintiff has alleged multiple claims with varying statute of limitations periods, the Court finds Plaintiff's allegation that she purchased the beverages within 'the maximum time allowable as determined by the statute of limitations periods accompanying each cause of action' to be too general to satisfy Rule 9(b)'s heightened pleading standard."). The Court acknowledges that Plaintiff here does allege that she purchased *Bonne Maman* Wild Blueberry Preserves and *Bonne Maman* Raspberry Preserves "in or around July 2024 at Whole Foods Market in Los Angeles, California." (Dkt. 29 at 8.) Therefore, the Court views this as a close call. Since the Court is dismissing the FAC with leave to amend in any event, the Court encourages Plaintiff to allege the proposed class period with specific start and end dates for each cause of action.

Regardless, the Court concludes that Plaintiff has failed to allege *scienter* in compliance with Rule 9(b). Indeed, Plaintiff has only alleged *scienter* in a conclusory manner by alleging that Defendant "intentionally misleads consumers," (<u>id.</u>); and "knew or should have known" it was making misleading representations. (<u>Id.</u> at 16, 21, 25, 26.) These conclusory allegations of *scienter* are insufficient without supporting facts that allow the Court to draw the reasonable inference that Defendant knew its labeling and marketing were misleading. <u>See Tomek</u>, 636 F. App'x at 713 ("Tomek has not alleged specific facts that allow the court to draw the reasonable inference that Apple knew it was issuing misleading advertisements at

the time Tomek purchased his laptop." (internal quotation marks and brackets omitted)); Wilson v. Hewlett-Packard Co., 668 F.3d 1136, 1146-47 (9th Cir. 2012) (affirming dismissal of complaint offering "merely conclusory" allegations of defendant's knowledge).

Plaintiff relies on Grimes v. Ralphs Grocery Co., 2024 WL 5470432, at *4 (C.D. Cal. Aug. 9, 2024), for the proposition that Rule 9(b) permits a conclusory allegation of *scienter*. (Dkt. 39 at 21.) Plaintiff is correct that Grimes says "the Ninth Circuit has held that a general allegation of scienter, including a simple allegation that the defendants had the requisite scienter, satisfies Rule 9(b)." Grimes, 2024 WL 5470432, at *4. But Grimes relies on In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994), for this proposition. See id. In re GlenFed, Inc. Sec. Litig. was decided long before the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and is no longer good law on the proposition that *scienter* can be alleged in a conclusory manner under Rule 9(b). See, e.g., Tanedo v. E. Baton Rouge Par. Sch. Bd., 2012 WL 5447959, at *8 (C.D. Cal. Oct. 4, 2012) ("Although the Ninth Circuit has held that a claimant could allege scienter simply by saying that scienter existed, that authority predated Twombly . . . ." (internal quotation marks and citation omitted)).

"The requirement for pleading scienter is less rigorous than that which applies to allegations regarding the circumstances that constitute fraud because Rule 9(b) states that malice, intent, knowledge, and other condition of mind of a person may be averred generally." Oestreicher v. Alienware Corp., 544 F. Supp. 2d 964, 968 (N.D. Cal. 2008) (internal quotation marks omitted), aff'd, 322 F. App'x 489 (9th Cir. 2009). "Nonetheless, nothing in the Federal Rules of Civil Procedure relieves a plaintiff of the obligation to set forth facts from which an inference of scienter could be drawn." Id. (internal quotation marks omitted). Here, Plaintiff has not provided any facts to plausibly support the allegations of *scienter* in the FAC. Accordingly, Plaintiff's claims under the UCL, FAL, and CLRA, as well as

Plaintiff's claims for negligent and intentional misrepresentation are dismissed with
leave to amend.

**C.    The Proposed Class And Subclass Definitions Are Overbroad.**

Defendant contends that this Court should dismiss the class allegations
because the proposed definitions are fatally overbroad by including individuals who
could not have been harmed by Defendant's allegedly misleading label, packaging,
and advertising – namely, those who purchased varieties of the Products made in
France and thus lack standing to bring claims against Defendant.[7]  (Dkt. 37 at 27-
28.)  By contrast, Plaintiff contends that the classes are properly limited to injured
consumers and that Defendant's argument improperly assumes that consumers who
purchased French-made varieties of the Products were not harmed.  (Dkt. 39 at 25.)
Plaintiff appears to contend that deceived consumers can be injured "even where
the specific item he purchased was not subject to the objectionable practice."  (Id.)

The FAC defines the proposed class and subclass as follows:

**California Class**

All persons, who, within the relevant statute of limitations period, purchased
any of the Products, in the State of California.

**California Consumer Subclass**

All persons, who, within the relevant statute of limitations period, purchased
any of the Products for personal, family, or household purposes, in the State
of California.

(Dkt. 29 at 17.)  The FAC further defines "the Products" as including seven
varieties of preserves or jelly, some of which are made in a factory in Belgium, and
some of which are made in a factory in France.  (Id. at 4, 9.)  Thus, the class

---

[7] Defendant also contends that Plaintiff lacks Article III standing to assert claims
regarding products she did not purchase.  (Dkt. 37 at 26.)  Because the Court
concludes that Plaintiff has failed to state a claim even as to the products she did
purchase, the Court finds it unnecessary at this time to address whether Plaintiff has
standing to assert claims regarding products she did not purchase.

definitions very clearly include consumers who purchased varieties of the Products that were made in France.  It is unclear to the Court based on the allegations in the FAC how a consumer who purchased varieties of the Products that were made in France suffered any harm.  See Culver, 2021 WL 10382839, at *7 ("While it is possible that some consumers of mustards might want to purchase only mustards actually made in France, the Complaint fails to contain allegations which establish that fact or the extent to which purchasers of Maille mustard products would fall within the category. The failure to provide such averments is problematic herein.").

As set forth above, the proposed definition of the class and subclass in the FAC includes consumers who could not possibly have suffered harm based on the allegedly unlawful conduct.  Plaintiff relies on Henriquez v. ALDI Inc., 2023 WL 2559200, at *5 (C.D. Cal. Feb. 7, 2023), and Koller v. Med Foods, Inc., 2015 WL 13653887, at *3-4 (N.D. Cal. Jan. 6, 2015), for the proposition that "courts have held that deceived consumers have been injured, even where the specific item he purchased was not subject to the objectionable practice."  (Dkt. 39 at 25-26.) However, both cases are distinguishable.  In Henriquez, the plaintiff alleged that the defendant's dolphin-safe representations about its tuna were misleading because they led consumers to believe that the company's practices were safer for dolphins than they actually were.  See Henriquez, 2023 WL 2559200, at *3.  The defendant argued that the plaintiff's allegations were insufficient to establish a concrete injury for standing because it was speculative whether any dolphin was actually harmed in the process of catching the tuna that plaintiff purchased.  Id. at *5.  The Henriquez court rejected this argument, finding sufficient harm based on the plaintiff's allegation that she would not have purchased any of the defendant's tuna, or would not have paid a premium for the defendant's tuna, had it not been for the defendant's allegedly misleading dolphin-safe representations.  Id.

Similarly, in Koller, the plaintiff alleged that the defendant's labeling of its olive oil as "extra virgin" was misleading in part because the oil was bottled in

clear, non-ultraviolet protective bottles that do not protect it from degradation from sunlight and heat over time.  See Koller, 2015 WL 13653887, at *3.  The plaintiff alleged that as a result of degradation of the olive oil over time, the defendant knew that the olive oil would not meet USDA standards to qualify as "extra virgin" by the time it was sold to consumers.  Id.  The defendant argued that the plaintiff's allegations were insufficient to establish concrete injury for standing because it was speculative whether the olive oil that the plaintiff purchased had degraded such that it did not qualify as "extra virgin."  Id.  The Koller court rejected this argument, finding sufficient harm based on the plaintiff's allegation that he would not have paid a premium for the olive oil had it not been for the defendant's allegedly misleading labeling of its products as "extra virgin."  Id. at *3-4.

Therefore, in Henriquez and Koller, the alleged deception was that the consumer was given a false assurance as to the safety or quality of all products that might not have been true in any particular case.  See Henriquez, 2023 WL 2559200, at *3; Koller, 2015 WL 13653887, at *3-4.  The difference here is that Plaintiff simply does not allege any false assurance as to the country of origin for those varieties of the Products that specifically claim to be a "Product of France."  (Dkt. 29 at 3-6.)  This is what makes Henriquez and Koller distinguishable because in those cases, the plaintiffs alleged that the representation as to safety or quality of any particular can of tuna or bottle of oil was not always true and the plaintiffs relied on the false assurance of safety or quality to either purchase the product in the first place, or to pay a premium.  See Henriquez, 2023 WL 2559200, at *3; Koller, 2015 WL 13653887, at *3-4; Safari v. Whole Foods Mkt. Servs., Inc., 2023 WL 5506014, at *7 (C.D. Cal. July 24, 2023) (distinguishing Henriquez because the plaintiffs in that case alleged misrepresentations as to the supply chain which impacted the safety of all cans of tuna), reconsideration denied sub nom. Safari v. Whole Foods Mkt., Inc., 2023 WL 8269774 (C.D. Cal. Oct. 10, 2023).

In sum, the Court concludes that the proposed class and subclass definitions

28

are overbroad and subject to being stricken under Rule 12(f).  See, e.g., Barnes v. Coca-Cola Co., 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) (granting motion to strike class allegations under Rule 12(f) as overbroad because the proposed definition "very likely include[d] persons who suffered no injury").  However, Plaintiff shall have the opportunity to revise the proposed definitions in an amended complaint.

**D.    Plaintiff May Plead Alternative Requests For Equitable Relief.**

Plaintiff's sixth claim for relief is based on quasi contract / unjust enrichment / restitution.  (Dkt. 29 at 28-29.)  Defendant contends that the Court should dismiss this claim because it seeks equitable remedies and the FAC does not allege that Plaintiff lacks an adequate remedy at law (i.e., damages).  (Dkt. 37 at 29.)  Indeed, the Ninth Circuit has held that a party "must establish that she lacks an adequate remedy at law" before seeking equitable remedies in diversity actions such as restitution.  See Sonner v. Premier Nutrition Corp., 971 F.3d 834, 844 (9th Cir. 2020) ("[W]e hold that the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action.").  Thus, a plaintiff "must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief."  Chebul v. Tuft & Needle, LLC, 2024 WL 5257021, at *3 (C.D. Cal. Oct. 9, 2024) (internal quotation marks omitted).  In other words, a plaintiff "must include substantive allegations in the complaint that explain why money damages are not an adequate remedy."  Id. (internal quotation marks omitted).

Here, Plaintiff explains that her sixth claim for relief is merely plead in the alternative to her claims seeking legal remedies.  (Dkt. 39 at 27.)  The Ninth Circuit has held that "we allow pleadings in the alternative—even if the alternatives are mutually exclusive."  PAE Gov't Servs., Inc. v. MPRI, Inc., 514 F.3d 856, 858-59 (9th Cir. 2007).  Thus, the Court concludes that Plaintiff may plead alternative

requests for equitable relief at this stage of the proceedings.  See Parrish v. Volkswagen Grp. of Am., Inc., 463 F. Supp. 3d 1043, 1061 (C.D. Cal. 2020) ("The Court agrees with the other district courts that have noted that barring claims for equitable relief at the pleading stage is inconsistent with the federal rules that permit pleading in the alternative."); accord Adams v. Cole Haan, LLC, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021); Byton N. Am. Co. v. Breitfeld, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020).

### E.    Plaintiff Failed To Plausibly Allege Entitlement To Punitive Damages.

"[A] plaintiff may recover punitive damages in connection with a non-contractual claim under California law if they establish by clear and convincing evidence that the defendant is guilty of (1) fraud, (2) oppression or (3) malice." Alacraz v. Marten Transp. Ltd., 2023 WL 4493725, at *4 (E.D. Cal. July 12, 2023) (citing Cal. Civ. Code § 3294(a)).  To properly plead a request for punitive damages, a plaintiff must satisfy "the post Iqbal/Twombly federal pleading standard." Cal. Spine & Neurosurgery Inst. v. Aetna Life Ins. Co., 2019 WL 1878355, at *1 (C.D. Cal. Mar. 7, 2019).  "That standard neither demands specificity nor permits the bare regurgitation of statutory language.  Instead, it requires plaintiffs to articulate enough facts to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted).  Thus, a plaintiff "must make enough non-conclusory allegations for the Court to determine that a punitive damages award is plausible, or at least enough non-conclusory allegations to permit the Court to draw a reasonable inference that [the] [d]efendant's actions warrant punitive damages." Id. at *2.

Here, the FAC includes only a bare request for punitive damages without sufficient facts to plausibly suggest that Defendant's actions warrant punitive damages.  (Dkt. 29 at 29.)  Plaintiff points to allegations that Defendant "intentionally and recklessly made misleading representations" and "knew or should have known that" its labeling, packaging and advertising of the Products

was deceptive.  (Dkt. 39 at 29-30 (citing Dkt. 29 at 16, ¶ 43; <u>id.</u> at 26, ¶ 92; <u>id.</u> at 28, ¶ 106).)  However, these allegations are all conclusory and therefore insufficient.  <u>See</u> <u>Kelley v. Corr. Corp. of Am.</u>, 750 F. Supp. 2d 1132, 1147-48 (E.D. Cal. 2010) (holding that conclusory allegations were insufficient to support a request for punitive damages); <u>MCI Commc'ns Servs., Inc. v. Sec. Paving Co., Inc.</u>, 2016 WL 1436521, at *4-5 (E.D. Cal. Apr. 12, 2016) (same).

The only other allegation Plaintiff points to in the FAC is that Defendant carefully places "Product of France" on its consumer-facing front label, or when it cannot fit, prominently pronounced on the back label of its smallest jars.  (Dkt. 39 at 29 (citing Dkt. 29 at 5-6, ¶¶ 9-10).)  However, it is entirely unclear to the Court how the fact that certain of the Products prominently disclose their country of origin plausibly supports a request for punitive damages.  Accordingly, Plaintiff's prayer for punitive damages is stricken with leave to amend.[8]

## V.

## ORDER

Consistent with the forgoing, Defendant's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.  (Dkt. 31.)  On or before October 30, 2025, Plaintiff shall file a Second Amended Complaint ("SAC") that attempts to remedy the identified defects.

DATED:  September 30, 2025

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

---

[8] The parties seems to agree that Plaintiff can only request punitive damages under her CLRA and intentional misrepresentation claims.  (Dkt. 37 at 30-31; Dkt. 39 at 29-30; Dkt. 40 at 18-19.)

31