**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCY GRAHAM, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ANDROS FOODS USA, INC. <br><br> Defendant. | Case No. 2:25-cv-03561-AJR <br><br> **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS WITHOUT FURTHER LEAVE TO AMEND (DKT. 46)** |

**I.**

**INTRODUCTION**

On April 22, 2025, Plaintiff Francy Graham ("Plaintiff"), individually and on behalf of all others similarly situated, filed a Complaint (the "Complaint") against Defendant Andros Foods USA, Inc. ("Defendant") alleging causes of action for: (1) Violation of California's Consumers Legal Remedies Act (the "CLRA"); (2) Violation of California's False Advertising Law (the "FAL"); (3) Violation of California's Unfair Competition Law (the "UCL"); (4) Breach of Express Warranty (Cal. Com. Code § 2313); (5) Breach of Implied Warranty (Cal. Com. Code § 2314); and (6) Intentional Misrepresentation. (Dkt. 1.) On June 18, 2025,

Defendant filed a Motion to Dismiss Plaintiff's Complaint.  (Dkt. 23.)  However, instead of opposing the Motion to Dismiss, Plaintiff elected to file an amended complaint.  (Dkt. 30.)

On July 9, 2025, Plaintiff filed a First Amended Complaint ("FAC") against Defendant alleging causes of action for: (1) Violation of the CLRA; (2) Violation of the FAL; (3) Violation of the UCL; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Quasi Contract/Unjust Enrichment/Restitution.  (Dkt. 29.)  On July 23, 2025, Defendant filed a Motion to Dismiss Plaintiff's FAC, (Dkt. 31), as well as two requests for judicial notice.  (Dkts. 32, 33.)  On July 30, 2025, Defendant filed a Corrected Memorandum of Points & Authorities in Support of Defendant's Motion to Dismiss the FAC, (Dkt. 37), as well as a Corrected Request for Judicial Notice.[1]  (Dkt. 38.)  On August 20, 2025, Plaintiff filed an Opposition to the Motion to Dismiss the FAC.  (Dkt. 39.)  On August 27, 2025, Defendant filed a Reply in Support of the Motion to Dismiss the FAC.  (Dkt. 40.)

On September 30, 2025, the Court issued a Memorandum Decision and Order Granting Defendant's Motion to Dismiss the FAC with Leave to Amend. (Dkt. 44)  On October 30, 2025, Plaintiff filed a Second Amended Complaint ("SAC") against Defendant alleging causes of action for: (1) Violation of the CLRA; (2) Violation of the FAL; (3) Violation of the UCL; (4) Negligent Misrepresentation; (5) Intentional Misrepresentation; and (6) Quasi Contract/Unjust Enrichment/Restitution.  (Dkt. 45.)  On November 13, 2025, Defendant filed a Motion to Dismiss Plaintiff's SAC (the "Motion to Dismiss"), (Dkt. 46), as well as

---

[1] Defendant's initial motion to dismiss exceeded the word limit under the Local Rules and therefore the parties stipulated that Defendant would file a corrected motion to dismiss and the hearing on the motion would be continued to allow 28 days' notice as required by the Local Rules. (Dkts. 34, 35.)  Similarly, Defendant's initial requests for judicial notice were missing page numbers on the exhibits as required by the Local Rules and therefore the parties stipulated that Defendant would file a corrected request for judicial notice.  (Id.)

a Declaration in Support of the Motion to Dismiss (the "Jones Declaration"), (Dkt. 47), and a Request for Judicial Notice in Support of the Motion to Dismiss (the "Request for Judicial Notice"). (Dkt. 48.) On December 17, 2025, Plaintiff filed an Opposition to the Motion to Dismiss (the "Opposition"). (Dkt. 50.) On December 23, 2025, Defendant filed a Reply in Support of the Motion to Dismiss (the "Reply"). (Dkt. 51.) On January 7, 2026, the Court held a hearing on the Motion to Dismiss and took the motion under submission. (Dkt. 52.) For the reasons discussed below, the Court GRANTS Defendant's Motion to Dismiss WITHOUT FURTHER LEAVE TO AMEND. (Dkt. 46.)

## II.

## PLAINTIFF'S ALLEGATIONS IN THE SAC

Plaintiff makes the following allegations in support of her claims, which are assumed to be true for purposes of the Motion to Dismiss, except those contradicted by the facts of which the Court has taken judicial notice. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987); Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001).

Defendant is a Delaware corporation with its principal place of business in New Jersey. (Dkt. 45 at 9.) Defendant markets and distributes *Bonne Maman*® ("*Bonne Maman*") preserves, jellies, fruit spreads and curds. (Id. at 3, 9.) This action concerns the following preserve and jelly products: *Bonne Maman* Apricot Preserves, *Bonne Maman* Cherry Preserves, *Bonne Maman* Mixed Berries Preserves, *Bonne Maman* Muscat Grape Jelly, *Bonne Maman* Peach Preserves, *Bonne Maman* Raspberry Preserves, *Bonne Maman* Strawberry Preserves, and *Bonne Maman* Wild Blueberry Preserves, and *Bonne Maman* Lemon Curd (collectively, the "Products"). (Id. at 9.) Defendant, through its labeling, packaging, and advertising of *Bonne Maman* products, intentionally misleads

consumers into believing that all *Bonne Maman* preserves, jellies, fruit spreads, and curds are exclusively made in France.  (Id. at 3.)  Specifically, the entire brand is named "*Bonne Maman*" – translating to "good mommy" in French, and used colloquially to mean "grandmother" or "granny" – and each *Bonne Maman* product is enclosed with a "Vichy print" lid (together, the "*French Representations*").  (Id. at 3-4.)  "Vichy" refers to the red and white checkered pattern, featured on the lid of each product.  (Id. at 4 n.2.)  The Vichy pattern was first mass produced in Vichy, France and popularized during the 17th and 18th centuries.  (Id.)  However, contrary to the *French Representations*, the Products are not exclusively made in France, but are instead sometimes made in Belgium.  (Id. at 5.)

Plaintiff, who resides in Los Angeles County, purchased *Bonne Maman* Wild Blueberry Preserves and *Bonne Maman* Raspberry Preserves in or about July 2024 at Whole Foods Market in Los Angeles, California.  (Id. at 8.)  Plaintiff saw and relied on the *French Representations*, reasonably believing that she was purchasing preserves that are exclusively made in France.  (Id.)  However, unbeknownst to Plaintiff, the Products are not exclusively made in France, but are also made in Belgium.  (Id.)  Plaintiff would not have purchased the Products or would have paid significantly less for them had she known that they were not exclusively made in France.  (Id.)

For the products made in Belgium, Defendant does not clearly and affirmatively identify the geographic origin by stating on the consumer-facing front label – or even back label – "Product of Belgium."  (Id. at 5.)  Instead, the back label reads: "Produced by Materne Conflux S.A. – 1 Allee Des Cerisiers B-5151 – Floreffe – Belgium."  (Id. at 5.)  However, for products made in France, the front label includes a clear and affirmative statement that states "Product of France," while also including on the back label, "Produced by Andros 46130 Biars – France."  (Id. at 6.)  Additionally, even on some products produced in France, like the miniature jars, Defendant cannot fit a "Product of France" statement on the

4

front label, but includes that clear statement on the back label. (Id.)

Defendant intentionally reinforces the perception that the Products are exclusively made in France by uniformly packaging the Products with its "Vichy print" lid and marketing the Products with additional information to further reinforce the *French Representations*, including selling a "Taste of France" gift set, and partnering with Taste France Magazine, "an initiative of the French Ministry of Agriculture and Food." (Id. at 11-12.) Defendant deceptively advertises the Products in order to exploit strong consumer sentiment for French-made goods. (Id. at 14.)

In October 2025, Plaintiff's counsel commissioned a consumer perception survey of a demographically representative sample of 442 California consumers (the "*Bonne Maman* Survey"). (Id.) Respondents were shown images of the front and back labels, including the purported disclosure of the address in Belgium where the product was produced. (Id.) The *Bonne Maman* survey found that, based on the packaging as a whole, over 59% of those respondents who believed that the product was imported believed that the product was made in France. (Id.) The *Bonne Maman* survey also confirmed that the purported disclosure on the back label is not clear, as less than 9 percent of respondents who believed that the product was imported were able to discern that the product was actually made in Belgium. (Id.)

Plaintiff brings this action on behalf of herself and California citizens who purchased any of the Products within the relevant statute of limitations period and all persons who, within the relevant statute of limitations period, purchased any of the Products for personal, family, or household purposes, in the State of California. (Id. at 19.)

\\

\\

5

## III.

## REQUEST FOR JUDICIAL NOTICE

Defendant requests judicial notice of fourteen documents:

1. **Exhibit A:** A true and correct copy of a label for *Bonne Maman*® brand preserves and jellies product produced in France.

2. **Exhibit B:** A true and correct copy of a label for *Bonne Maman*® Muscat Grape Jelly produced in Belgium

3. **Exhibit C:** A true and correct copy of a label for *Bonne Maman*® Wild Blueberry Preserves produced in Belgium.

4. **Exhibit D:** A true and correct copy of a label for *Bonne Maman*® Raspberry Preserves produced in Belgium.

5. **Exhibit E:** A true and correct copy of a label for *Bonne Maman*® Strawberry Preserves produced in Belgium.

6. **Exhibit F:** A true and correct copy of a label for *Bonne Maman*® Cherry Preserves produced in Belgium.

7. **Exhibit G:** A true and correct copy of a label for *Bonne Maman*® Mixed Berries Preserves produced in Belgium.

8. **Exhibit H:** A true and correct copy of a label for *Bonne Maman*® Peach Preserves produced in Belgium.

9. **Exhibit I:** A true and correct copy of a label for *Bonne Maman*® Apricot Preserves produced in Belgium.

10. **Exhibit J:** A true and correct copy of a label for *Bonne Maman*® Lemon Curt produced in Belgium.

11. **Exhibit K:** A true and correct copy of U.S. Trademark Registration No. 4,103,670 for *Bonne Maman*® in Int. Cls. 29, 30, and 32 registered Feb. 28, 2012.

12. **Exhibit L:** A true and correct copy of U.S. Trademark Registration No. 6,988,036 for *Bonne Maman*® in Int. Cls. 5, 29, 30, and 32 registered Feb.

6

28, 2023.

13. **Exhibit M:** A true and correct copy of U.S. Trademark Registration No. 1,308,179 for *Bonne Maman*® in Int. Cls. 29 and 30 registered Dec. 4, 1984.

14. **Exhibit N:** An archived web page of the British Broadcasting Corp. ("BBC") available at https://www.bbc.co.uk/languages/european_languages/countries/belgium.shtml.

(Dkt. 48.)

Exhibits A through J are properly subject to judicial notice because they are incorporated by reference into the SAC and Defendant establishes their authenticity through the declaration of Sylvain Dronet ("Dronet Decl."), Vice President of Defendant.  See Knievel v. ESPN, 393 F.3d 1086, 1076 (9th Cir. 2005); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  "Courts regularly take judicial notice of images of product packaging when evaluating the sufficiency of false advertising claims."  La Barbera v. Ole Mexican Foods Inc., 2023 WL 4162348, at *3 (C.D. Cal. May 18, 2023), appeal dismissed sub nom. LaBarbera v. Ole Mexican Foods, Inc., 2023 WL 11823366 (9th Cir. Sept. 27, 2023).  Moreover, the authenticity of Exhibits A through J is not disputed and the Request for Judicial Notice is unopposed.  Thus, the Court GRANTS Defendant's Request for Judicial Notice as to Exhibits A through J.

Exhibits K through M are government records that are not subject to reasonable dispute pursuant to Federal Rule of Evidence 201(b).  Similarly, Exhibit N is a government web page that is not subject to reasonable dispute.  As such, the Court also GRANTS Defendant's Request for Judicial Notice as to Exhibits K through N.  See Gerritsen v. Warner Bros. Ent. Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) ("Under Rule 201, the court can take judicial notice of public records and government documents available from reliable sources on the Internet, such as websites run by governmental agencies." (internal quotation marks and

7

brackets omitted)).

## IV.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Mashiri v. Epsten Grinnell & Howell, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted). Additionally, the heightened pleading requirements of Rule 9(b) apply to "averments" of fraud. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1104 (9th Cir. 2003). Specifically, allegations of fraud must be stated with particularity, whereas malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b).

The Court must accept as true all non-conclusory factual allegations contained in the complaint and must construe the complaint in the light most favorable to the plaintiff. See Steinle v. Cty. & Cnty. of San Francisco, 919 F.3d 1154, 1160 (9th Cir. 2019). "Generally, a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007) (footnote omitted). The Court may consider "only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (internal quotation marks omitted); Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) ("In

determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

The Court may not dismiss a complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Akhtar, 698 F.3d at 1212 (internal quotation marks omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (internal quotations omitted)).  However, "a district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims." Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980); accord U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) ("Further, the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (internal quotation marks and brackets omitted)).

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of striking such matter is to avoid wasting "time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks and ellipses omitted).  A motion to strike is generally disfavored and should only be granted if "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." Holmes v. Elec. Document Processing, Inc., 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (internal question marks omitted).  "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." Id.

(internal quotation marks omitted).  "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court."  Cruz v. Bank of N.Y. Mellon, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012).

## IV.

## DISCUSSION

**A.**    **Plaintiff Still Fails To Plausibly Allege That A Reasonable Consumer Would Be Deceived About The Products' Country Of Origin.**

To state a claim under the UCL, FAL, or CLRA, a plaintiff must allege that the defendant's purported misrepresentations are likely to deceive a reasonable consumer.  See Williams v. Gerber Products Co., 552 F.3d 934, 938 (9th Cir. 2008) (explaining that unless the advertisement at issue targets a particularly vulnerable group, courts must evaluate claims for false or misleading advertising from the perspective of a reasonable consumer); Reid v. Johnson & Johnson, 780 F.3d 952, 958 (9th Cir. 2015) ("It is true that violations of UCL, FAL, and CLRA are evaluated from the vantage point of a 'reasonable consumer.'").  Under the reasonable consumer standard, a plaintiff must plausibly allege "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotation marks omitted).  "This requires more than a mere possibility that [the defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  Id. (internal quotation marks omitted); accord Panelli v. Target Corp., 172 F.4th 1120, 1124 (9th Cir. 2026).

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]."  Williams, 552 F.3d at 938.  However, dismissal is appropriate where the advertising or labeling itself makes it "impossible for the plaintiff to prove that a reasonable consumer was likely to be

10

deceived."  Id. at 939; accord McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1099 (9th Cir. 2023) (affirming dismissal for failure to state a claim under Rule 12(b)(6) because the back label resolved the ambiguity on the front label such that a reasonable consumer would not be deceived).  "Moreover, there has been an ever-increasing number of cases (even within the Ninth Circuit) in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label is (or could be) deceptive or misleading to a reasonable consumer." Culver v. Unilever United States, Inc., 2021 WL 2943937, at *4 (C.D. Cal. June 14, 2021) (citing cases); see, e.g., Husain v. Campbell Soup Co., 2025 WL 3539131, at *1 (9th Cir. Dec. 10, 2025) (Mem.) (affirming dismissal for failure to state a claim under Rule 12(b)(6) because the ingredient list on the back panel resolved any ambiguity on the front label such that no reasonable consumer would be deceived). Indeed, "where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." Hairston v. S. Beach Beverage Co., 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (citing cases).

Here, Plaintiff alleges that Defendant misleads consumers into believing that the Products are exclusively made in France through what Plaintiff calls the *French Representations*.  (Dkt. 45 at 3-4.)  According to the SAC, the *French Representations* are:  (1) the fact that the entire brand is named "*Bonne Maman*" – translating to "good mommy" in French, and used colloquially to mean "grandmother" or "granny"; and (2) each jar of the Products is enclosed with a "Vichy print" lid, which is a red and white checkered pattern first mass produced in Vichy, France during the 17th and 18th centuries.  (Id. at 3-4 & n.2.)  Below are images from the SAC showing the brand name "*Bonne Maman*" and the "Vichy print" lids on the Products:

11



(Id. at 5.)  The SAC also alleges that Defendant's advertising of the Products reinforces the perception that the Products are exclusively made in France.  (Id. at 11-14.)  The Court will address each of the allegedly misleading representations below.

### 1.  The Front Labels and Lids

As an initial matter, many courts have recognized that a reasonable consumer would "not be misled [as to the country of origin] by the presence of some foreign language words or phrases on the Products."  La Barbera, 2023 WL 4162348, at *14 (citing cases).  Indeed, "[t]he mere presence of words in a foreign language is insufficient to mislead a reasonable consumer" as to the country where the products were made.  Eshelby v. L'Oreal USA, Inc., 664 F. Supp. 3d 417, 425 (S.D.N.Y. 2023) (citing cases).  These courts have explained that the reasonable consumer "has a basic understanding that there is such a thing as global capitalism, in which markets for goods and services operate across borders," and therefore "it is an inherently unreasonable assumption that just because a food clearly originates from a foreign country, . . . that *ipso facto* it must be made in that country."  La Barbera, 2023 WL 4162348, at *14; see also Becerra v. Dr Pepper/Seven Up, Inc., 945 F.3d 1225, 1230 (9th Cir. 2019) ("And even if some consumers would make that assumption, the packaging was not deceptive just because some consumers could

unreasonably misunderstand the product.").

For example, in Culver v. Unilever United States, Inc., the court granted a motion to dismiss misleading labeling claims based on the use of French words on mustard jars that were made in Canada. See Culver, 2021 WL 2943937, at *1, *7-9. The Culver court explained its reasoning as follows:

> [T]he allegedly misleading words do not by themselves actually indicate the country where the Products are manufactured. While the front labels contain two words in the French language – which are prepositions (i.e. "depuis" and "que") – and two proper nouns (i.e. "Paris" and "Maille"), there are no concomitant words or references to a geographic source or origin. For example, there are no phrases such as "from Paris (i.e. "de Paris"), "product of France," or even "imported." All of the remaining many words on the front label are in English. Likewise, the translation of the French words into English does not suggest the place of manufacture. "Depuis 1747" means "since 1747" and "que Maille" means "that (or than) Maille." Thus, the pleadings do not delineate a basis, other than unfounded supposition, for a consumer to believe that the Products were made in France.

Id. at *8 (footnote omitted). Thus, the Culver court concluded that the plaintiff had failed to state a claim that the labeling on the mustard jars was misleading as to the country of origin. Id. at *9.

Similarly here, the label on the Products contains the French phrase "*Bonne Maman*," which translates to "good mommy," (Dkt. 45 at 3), and does not reference or suggest a geographic source, origin, or place of manufacture. See Culver, 2021 WL 2943937, at *8; La Barbera, 2023 WL 4162348, at *14. Also similar to Culver, all of the other words on the label of the Products are in English. See Culver, 2021 WL 2943937, at *8; (Dkt. 48 at 12-13, 15-16, 18-19, 21-22, 24-25, 27-28, 30-31). The mere use of a single French phrase is particularly unlikely to deceive a reasonable consumer about the Products' country of origin because

13

French is an official language for both France and Belgium, the two nations where the Products are produced.  See Culver, 2021 WL 10382839, at *9 ("[I]t must be noted that French is the official language of dozens of countries other than France, including Belgium, Ivory Coast, Luxembourg, Vanuatu and, of course, Canada.").

Moreover, the phrase "*Bonne Maman*" is a registered trademark, (Dkt. 48 at 42-48), which further undermines Plaintiff's claim that the phrase is misleading because "a prerequisite to acquiring a trademark registration in the United States[] [is that the] mark must not be deceptively misdescriptive of the product." Rooney v. Cumberland Packing Corp., 2012 WL 1512106, at *5 (S.D. Cal. Apr. 16, 2012) (granting motion to dismiss misleading labeling claims in part because trademarked phrase "Sugar in the Raw" was not deceptively misdescriptive).  Indeed, the Culver court also relied in part on the fact that the allegedly misleading phase was a registered trademark:

> It cannot be doubted that Defendant has the right to utilize its trademarks and other authorized words which correctly indicate that the Products belong to the Maille brand. Thus, Defendant cannot be held to be misleading the consuming public when it utilized either its trademarks (*i.e.* "Maille" or "Que Maille") or other words or phrases which are associated with its merchandising history (*i.e.* "Paris" and "Depuis 1747" – reflecting the opening in 1747 of its first boutique establishment in Paris).

Culver, 2021 WL 2943937, at *8; see also Myers-Taylor v. Ornua Foods N. Am., Inc., 2019 WL 424703, at *4 (S.D. Cal. Feb. 4, 2019) (trademarked phrase "Milk From Grass-Fed Cows" was not misleading); McKinnis v. Kellogg USA, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (trademarked name "FROOT LOOPS" was not misleading).  Thus, the Court concludes that Plaintiff's reliance on the language on the front label of the Products is insufficient to plausibly allege that a reasonable consumer would be deceived about the country of origin of the Products. See Culver, 2021 WL 2943937, at *9 ("In sum, the Court finds that the front labels

14

of the Purchased Mustard Products do not contain sufficiently deceptive features as to the place of origin of the condiments."); Govea v. Gruma Corp., 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021) ("The mere fact that the Packaging includes words in Spanish, including the vague and meaningless phrase "a piece of Mexico," is insufficient to support Plaintiffs' claims. The Packaging would not likely deceive a significant portion of the general public into believing that the Tortillas are manufactured in Mexico.").

Plaintiff contends that the language on the front label of the Products in combination with the use of the "Vichy print" on the lids of the Products creates an overall brand image that could deceive a reasonable consumer about the country of origin. (Dkt. 45 at 3-4; Dkt. 50 at 7, 13.) Indeed, the SAC alleges that "Vichy check textiles have been popular worldwide and associated with France since at least the mid-18th century." (Dkt. 45 at 4 n.2.) However, as support for this assertion in the FAC, Plaintiff previously cited an article from Vogue Mexico & Latin America which explains that "the original manufacture of this fabric originated in Malaysia" and "was imported to England under Elizabeth I." (Dkt. 29 at 3 n.1 (citing Laura Tortora, Vichy checks and the story behind the eternal summer print, Vogue Mexico & Latin America, July 1, 2022, www.vogue.mx/moda/articulo/cuadros-vichy-historia-del-estampado-de-moda-del-verano).)[2] The article explains that "Vichy check," more popularly known as "Gingham print," was first popularized in the United States by movie stars such as Joan Crawford, Katharine Hepburn, and Brigitte Bardot, and later famously worn

_____

[2] Plaintiff cannot make allegations in the SAC that directly contradict allegations in the FAC. See, e.g., Air Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., 744 F.3d 595, 600 (9th Cir. 2014). Even assuming that Plaintiff's allegations in the SAC as to the association of "Vichy print" with France do not directly contradict Plaintiff's allegations in the FAC, the Court may consider the allegations in the FAC in determining the plausibility of the allegations in the SAC. See, e.g., AK Futures LLC v. TBH Supply LLC, 2024 WL 2984023, at *3 (C.D. Cal. Jan. 19, 2024) (citing cases).

15

by Lady Diana, the Princess of Wales.  (Tortora, <u>Vichy checks and the story behind the eternal summer print</u>, www.vogue.mx/moda/articulo/cuadros-vichy-historia-del-estampado-de-moda-del-verano</u>.)  Indeed, the whole point of the article seems to be that Gingham print has a timeless international appeal, as opposed to being somehow uniquely associated with France.  (<u>Id.</u>)

Thus, the Court concludes that the use of the "Vichy print" on the lids of the Products, in combination with the brand name "*Bonne Maman*," is insufficient to plausibly suggest that a reasonable consumer would be misled about the country of origin.  <u>See</u> <u>Maeda v. Kennedy Endeavors, Inc.</u>, 407 F. Supp. 3d 953, 974 (D. Haw. 2019) ("[T]he California consumer protection claims presented here fall into the exceptional category of cases susceptible to dismissal because a reasonable consumer would not be misled into believing that the Hawaiian Snacks originate from Hawai'i due to the mere inclusion of the word 'Hawaiian' plus Hawai'i-related imagery on the snacks' packaging."); <u>Romero v. Tropicale Foods, LLC</u>, 2021 WL 6751908, at *6 (C.D. Cal. Dec. 22, 2021) ("Neither the cartoon woman nor the cartoon cart includes colors that hint at an association with Mexico (such as the Mexican flag colors). But even if they did, they would remain simple embellishments that do not communicate to any reasonable consumer that the product is, in fact, made in Mexico."); <u>La Barbera</u>, 2023 WL 4162348, at *15 ("But no reasonable consumer would think the Mexican flag imagery on the Products suggests that they must be made in Mexico, for these are highly stylized 'flags,' decidedly unofficial in nature: they adopt the Mexican tricolor, with images of wheat or corn in lieu of the national coat of arms."); <u>Govea</u>, 2021 WL 1557748, at *4 ("[I]f the packaging merely evokes the spirit of a generalized location or culture in a vague and nonspecific manner, such claims are properly dismissed at the 12(b)(6) stage.").

The combination of "Vichy print" on the lids of the Products with the brand name "*Bonne Maman*" on the front labels is particularly unlikely to mislead a

16

reasonable consumer about the country of origin of the Products because many of the Products are made in France.  (Dkt. 45 at 5.)  Therefore, to the extent these "*French Representations*" "communicate the idea of 'Frenchness'" of the Products, (id. at 4), the representations are accurate because all of the Products are either made in France or Belgium.  (Id. at 5.)  And of course, Belgium is France's neighbor directly to the north, sharing a long border and the French language.  See Culver, 2021 WL 10382839, at *9 ("[I]t must be noted that French is the official language of dozens of countries other than France, including Belgium, Ivory Coast, Luxembourg, Vanuatu and, of course, Canada.").  Therefore, the Court concludes that no reasonable consumer would interpret the combination of "Vichy print" on the lids and the brand name "*Bonne Maman*" as representing that the Products are "exclusively made in France" (and never made in neighboring Belgium).  (Dkt. 45 at 5); see Moore v. Trader Joe's Co., 4 F.4th 874, 882-83 (9th Cir. 2021) ("[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." (internal quotation marks omitted)).

### 2. **Defendant's Advertising**

Plaintiff contends that Defendant's advertising of the Products reinforces the perception that the Products are exclusively made in France.  (Dkt. 50 at 13-14.) Specifically, Plaintiff contends that Defendant "uses its affiliation with France to its strategic and commercial advantage by selling a 'Taste of France' gift set (¶ 31), partnering with Taste France Magazine, an initiative of the French Ministry of Agriculture (*id.*), and featuring its products at the Business France – French Trade Commission's French GourMay Food & Wine Festival (¶ 32)."  (Id. at 14.) However, Plaintiff fails to allege that any of the varieties of the Products sold in the

17

"Taste of France" gift set or marketed in Taste France Magazine were not actually produced in France.[3] (Dkt. 45 at 12-14.)

Regardless, marketing the Products as a "Taste of France" is "at once *true* in every meaningful sense and meaningless." La Barbera, 2023 WL 4162348, at *15 ("Phrases like 'The Taste of Mexico!' are at once *true* in every meaningful sense and meaningless; the point is that they are different in kind from stating the Products are from Mexico."). The phrase is true because preserves, jellies, fruit spreads, and curds are foods eaten or made in France. (Dkt. 45 at 12-14.) But the phrase "is also meaningless because it is somewhat nonsensical to say that anything tastes like a country." La Barbera, 2023 WL 4162348, at *15. Therefore, "[o]nly an insignificant number of unreasonable people viewing such representations in an unreasonable manner would think that" "Taste of France" must mean that the Products are exclusively made in France (and never made in Belgium). Id.; see Kim v. Blue Triton Brands, 2022 WL 17061085, at *4 (C.D. Cal. Nov. 1, 2022) ("Mere references to a geographic location on the front of the packaging are not sufficient to mislead a reasonable consumer."). Thus, the Court concludes that even when the marketing of the Products is considered in conjunction with the front labels and lids, Plaintiff still has not plausibly alleged that a reasonable consumer would be deceived into believing that the Products are exclusively made in France (and never made in Belgium).

### 3. The Back Labels

Even assuming that the combination of Defendant's advertising, the front labels, and the lids created some ambiguity about whether the Products are made

---

[3] The SAC includes a photo of a store shelf at the retailer World Market showing the Products on a shelf reserved for French products. (Dkt. 45 at 4.) However, Plaintiff does not allege that Defendant directed the retailer to display the Products in this manner and instead simply alleges that this example of displaying the Products "indicates that, like consumers, World Market believes that all Bonne Maman products are made in France." (Id.)

18

exclusively in France, which it did not, the Court would be required to "consider[] other information readily available to the consumer that could easily resolve the alleged ambiguity." Moore, 4 F.4th at 882.  Indeed, the Ninth Circuit has explained that "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." Id. (internal quotation marks omitted); Husain, 2025 WL 3539131, at *1 ("But even if the front label is ambiguous, the rest of the packaging cures any ambiguity.").

Here, a reasonable consumer who was trying to determine the country of origin of the Products would be able to read the back label which clearly discloses the address where the specific jar of the product was produced.  (Dkt. 45 at 5-6.)  Indeed, the SAC admits that the varieties of the Products that are produced in Belgium state on the back label, "Produced by Materne Conflux S.A. – 1 Allee Des Cerisiers B-5151 – Floreffe – Belgium."  (Id. at 5.)  Similarly, the varieties of the Products that are produced in France state on the back label, "Produced by Andros 46130 Biars – France."  (Id. at 6.)  Below are images of front and back labels from the SAC:







19

(Id. at 6.)  Below are additional images of back labels from Defendant's Request for Judicial Notice that disclose the specific product being made in Belgium: (Dkt. 48 at 25, 28.)



Plaintiff contends that the Court should not consider the back labels.  (Dkt. 50 at 15.)  "However, the front label must be unambiguously deceptive for a defendant to be precluded from insisting that the back label be considered together with the front label."  McGinity, 69 F.4th at 1098; see also Williams, 552 F.3d at 939 ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."); Panelli, 172 F.4th at 1126 ("We find that the claims on the labels of the bed sheets Target sold are not ambiguous, and therefore, the facts of this case do not trigger the Moore framework.").

Here, the Court easily concludes that the front labels of the Products are not unambiguously deceptive, even when considered in combination with the lids and Defendant's marketing.  See McGinity, 69 F.4th at 1098 ("Unlike a label declaring that a product is '100% natural' or 'all natural,' the front 'Nature Fusion' label does not promise that the product is wholly natural.").  Just like the front labels in McGinity, the front labels of the Products, even combined with the lids and Defendant's marketing, at best communicate an overall "Frenchness" of the Products, (Dkt. 45 at 4), but there simply is no affirmative promise about what

20

proportion of the Products are made in France as opposed to neighboring (and French-speaking) Belgium.  See McGinity, 69 F.4th at 1098 ("Although the front label represents that something about the product bears a relationship to nature, the front label does not make any affirmative promise about what proportion of the ingredients are natural.").  Thus, the Court properly considers the back labels to resolve any ambiguity as to whether the Products are made exclusively in France. See id. at 1099 ("We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label.").

Ultimately, when the Court considers all of the information available to consumers (the "*Bonne Maman*" trademark, the use of the "Vichy print" on the lids, Defendant's advertising, and the disclosure of the address where the product is produced on the back label), the Court concludes that no reasonable consumer would be deceived into believing that the Products are made exclusively in France (and never made in Belgium).  See La Barbera, 2023 WL 4162348, at *19 ("No such individual would be so convinced of the Mexican origin of the Products from their front labels that she would ignore the back label. Thus, anyone who cared about whether the Products were made in Mexico would read their back label and see for themselves they are made in the United States."); Culver, 2021 WL 2943937, at *9 ("The two French words and the two proper names on the front labels were either Defendant's trademarks or referenced the history of the Maille brand. That is not enough to make the labels so misleading that a reasonable consumer – who had a question as to the country of origin of the Products – would not be expected to look at the full packaging for the answer, which was clearly and correctly provided on the rear label."); Hodges v. King's Hawaiian Bakery W., Inc., 2021 WL 5178826, at *6 (N.D. Cal. Nov. 8, 2021) ("The label plainly states, 'Est. 1950,' and 'Hilo, Hawaii,' providing a reference to the company's historical origin. This is insufficient to establish that the sweet rolls are still produced in Hawaii. Contrary to plaintiffs' argument, the statement on the back label of defendant's

packaging, 'Manufactured by: King's Hawaiian Bakery West, Inc., 19161 Harborgate Way, Torrance, CA 90501,' is plainly sufficient to tell consumers where the sweet rolls are produced.").

### 4.     The Consumer Survey

The main difference between the FAC and the SAC is that in October of 2025, Plaintiff's counsel commissioned a consumer survey of a demographically representative sample of 442 California consumers (the "*Bonne Maman* Survey"). (Dkt. 45 at 14.)  Respondents were shown images of the front and back labels of the Products, including the disclosure of the address in Belgium where the specific product is produced.  (Id.)  The *Bonne Maman* Survey found that, "based on the packaging as a whole, over 59% of those respondents who believed that the Product is imported believed that the Product was made in France."  (Id.)  The *Bonne Maman* Survey "also confirmed that the purported disclosure on the back label is not clear, as less than 9 percent of respondents who believed that the Product is imported were able to discern that the Product is actually made in Belgium."  (Id.) The foregoing allegations represent the sum and substance of the information related to the *Bonne Maman* Survey contained in the SAC.

As an initial matter, the Ninth Circuit has held that consumer surveys alone cannot salvage otherwise implausible labeling claims.  See Becerra, 945 F.3d at 1231 ("The survey cannot, on its own, salvage Becerra's claim."); see also Hawyuan Yu v. Dr Pepper Snapple Grp., Inc., 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("The Court [is] also bound by Becerra's holding that adding surveys cannot alone salvage implausible claims. The only material difference between this amended complaint and the original complaint that the Court dismissed on June 18, 2019, is the addition of the two surveys. Under Becerra, this is insufficient to survive a motion to dismiss." (citation omitted)); Nacarino v. Chobani, LLC, 2021 WL 3487117, at *8 (N.D. Cal. Aug. 9, 2021) ("Courts in this district have interpreted Becerra to hold that consumer deception claims that are otherwise

22

facially implausible cannot be redeemed merely by surveys.") (collecting cases); La Barbera, 2023 WL 4162348, at *20 n.4 (C.D. Cal. May 18, 2023) ("A plaintiff cannot rely solely on consumer surveys to state a claim." (internal quotation marks omitted)).

Having concluded that Plaintiff's consumer deception claims are facially implausible, the Court further concludes that the *Bonne Maman* Survey is insufficient to salvage the claims.  See Becerra, 945 F.3d at 1231.  "Although [the Court must] accept the allegations concerning the survey as true at this stage of litigation, the survey is not particularly instructive or helpful to [the Court] in deciding this case."  McGinity, 69 F.4th at 1099.  The first problem is that the SAC contains only a "barebones" description of the survey results without sufficient background or context.  See Clark v. Westbrae Nat., Inc., 2020 WL 7043879, at *3 (N.D. Cal. Dec. 1, 2020) ("Plaintiff's barebones allegation regarding the results of a 2020 survey which allegedly showed that 69.5% of 400 consumers believed that 'the "Vanilla" representation on the Product meant that the Product's flavor comes exclusively from the vanilla bean' (*see* FAC ¶ 2), does not push Plaintiff's reasonable consumer allegation over the plausibility line."); Puri v. Costco Wholesale Corp., 2021 WL 6000078, at *7 (N.D. Cal. Dec. 20, 2021) ("These barebones allegations do not include important details such as exactly what questions the survey asked or what its methodology entailed.").

Therefore, it is entirely unclear from the allegations in the SAC: (1) whether the survey respondents were shown labels of only those varieties of the Products that are produced in Belgium (as opposed to being shown labels of all varieties of the Products so that the respondents could see the differences in the labels); or (2) how many of the respondents believed that the Products are imported (the SAC only alleges that "over 59% of those respondents who believed that the Product is imported believed that the Product was made in France" and that "less than 9 percent of respondents who believed that the Product is imported were able to

23

discern that the Product is actually made in Belgium"). (Dkt. 45 at 14.) Indeed, the SAC lacks basic information about the survey such as what questions were asked and what answers were given. (Id.); see Clark, 2020 WL 7043879, at *4 ("Plaintiff does not even allege what the survey asked so it is impossible to infer that notwithstanding the commonsense interpretation of 'vanilla' as not implying flavored exclusively with vanilla bean, Plaintiff has plausibly alleged that it does."). Therefore, the vague survey allegations simply do not make plausible that a reasonable consumer would be deceived into believing that the Products are exclusively made in France (and never made in Belgium). See Clark, 2020 WL 7043879, at *4 ("At bottom, the vague survey allegation does not make plausible that reasonable consumers understand that 'vanilla' soymilk is flavored exclusively with vanilla bean."); Culver, 2021 WL 10382839, at *14 ("[A] survey which does not include all of the relevant information cannot be found to establish what a reasonable consumer would believe when confronted with the packaging of the product.").

But the bigger problem is that even if the survey had demonstrated plausible deception as to whether the Products are exclusively made in France, which it did not, the reasonable consumer would still be required to consider the back labels of the Products. See, e.g., Culver, 2021 WL 10382839, at *14 ("[T]he Court finds that a reasonable consumer would not be free to ignore the available information in the entirety of the products' containers."); McGinity, 69 F.4th at 1099 ("Although a back label cannot contradict deceptive statements made on the front label, the back label can be used to interpret what is conveyed by the labeling when the front label is ambiguous, as here."). Given the clear disclosure of the address where each product is produced on the back label, no reasonable consumer would believe that the Products are exclusively made in France (and never made in Belgium). See Culver, 2021 WL 10382839, at *14 ("Hence, if the consumer had a question as to the place where the mustard was made, he or she would be expected to examine the

24

rear labels of the mustard bottles herein which would inform him or her that the item is a 'Product of Canada.'"); McGinity, 69 F.4th at 1099 ("With the entire product in hand, we conclude, no reasonable consumer would think that the products are either completely or substantially natural. The survey results do not make plausible the allegation that the phrase 'Nature Fusion' is misleading.").

Plaintiff places heavy reliance on Shalikar v. Asahi Beer U.S.A., Inc., 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017), to support her argument that the SAC plausibly alleges a reasonable consumer would be deceived about the Products' country of origin.  (Dkt. 50 at 7, 9-11.)  In Shalikar, the plaintiffs alleged that the product labeling on Asahi beer was deceptive as to the country of origin because the beer was actually brewed in Canada while a reasonable consumer would believe that the beer was brewed in Japan.  See Shalikar, Inc., 2017 WL 9362139, at *3.  Specifically, the plaintiffs alleged that "the overall brand image" of the beer was misleading as to the country of origin based on the following features of the label and packaging:  (1) the name "Asahi," which means "morning sun" in Japanese, is translated into English; (2) the Japanese Katakana script which in Japanese is pronounced "Asahi beer"; (3) the Japanese Katakana script which in Japanese means "Super Dry," is used; and (4) the Japanese Kanji characters which in Japanese are pronounced, "Karakuchi," and mean "dry taste," are used.  Id. at *7.  In addition to the foregoing features, it was undisputed that the label and packaging of the beer disclosed that the beer was brewed in Canada.  Id.  This statement appeared in all capital letters printed in a color different from that of the background in a font size that was smaller than that used for the English text and Japanese script on the labels.  Id.  It was also undisputed that the bottleneck labels were visible when the bottles were within the carton.  Id.

Based on these facts, the Shalikar court concluded that the allegations were sufficient to state a claim for deceptive labeling and that the effect of the disclosure that the beer was brewed in Canada could not be determined as a matter of law on

the then-existing record.  Id. at *8.  The Shalikar court explained that this conclusion was supported by survey evidence in the operative complaint showing that more than 86% of the demographically representative U.S. sample of over 1,000 adults who viewed the beer or its packaging believed that it was produced in Japan.  Id.  Thus, the Shalikar court concluded that the plaintiffs had "plausibly alleged a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  Id. (internal quotation marks omitted).

As an initial matter, the Court concludes that Shalikar is distinguishable because the label on the Asahi beer included extensive usage of prominently featured Japanese phrases, script, and characters.  See Shalikar, Inc., 2017 WL 9362139, at *7.  By contrast, here, the label on the Products contains only the brand name "*Bonne Maman*" in French, and all other text is in English.  (Dkt. 45 at 5-6.) The only other indicium of French origin is the "Vichy print" lids, (Dkt. 45 at 4 n.2; Dkt. 29 at 3 n.1), but as explained above, the combination of the "Vichy print" on the lids of the Products with the brand name "*Bonne Maman*" is insufficient to plausibly suggest that a reasonable consumer would be misled about the country of origin.  Therefore, the conclusions of the Shalikar court were justified by a substantially more suggestive product label than has been alleged here.  See Govea, 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021) (distinguishing Shalikar because the product label at issue was substantially more suggestive than the product label at issue); Maeda, 407 F. Supp. 3d at 973 (same); Am. Achievement Corp. v. Jostens, Inc., 622 F. Supp. 3d 749, 768 n.12 (D. Minn. 2022) (same).

Moreover, the Shalikar court relied in part on survey evidence showing that more than 86% of the demographically representative U.S. sample of over 1,000 adults who viewed the beer or its packaging believed that it was produced in Japan. See Shalikar, Inc., 2017 WL 9362139, at *8.  By contrast here, the survey results alleged in the SAC do not include the number of respondents who believed that the

26

Products are imported (the SAC only alleges that "over 59% of those respondents who believed that the Product is imported believed that the Product was made in France" and that "less than 9 percent of respondents who believed that the Product is imported were able to discern that the Product is actually made in Belgium"). (Dkt. 45 at 14.)  Thus, the survey results alleged in the SAC are too vague and simply not comparable to the survey results alleged in Shalikar.

Whereas the Shalikar court concluded that it could not determine as a matter of law the effect of the disclosure on the bottle neck that the beer was brewed in Canada, see Shalikar, Inc., 2017 WL 9362139, at *8, the Court here concludes that it must consider the disclosure of the address where the specific product was produced on the back label of the Products.  See McGinity, 69 F.4th at 1098.  It is worth pointing out that Shalikar was decided before the Ninth Circuit clarified in McGinity that where the front label of a product creates ambiguity, "the ambiguity can be resolved by reference to the back label." Id. at 1099.  As explained above, the front label of the Products is not unambiguously deceptive as to the country of origin and does not even create ambiguity as to the country of origin.  The Court has assumed that Plaintiff's allegations about Defendant's advertising somehow create ambiguity and easily concludes that any ambiguity is resolved by the disclosure of the address where the product is produced on the back label.

Finally, the Court notes that the Culver court expressly disagreed with the conclusions in Shalikar.  See Culver, 2021 WL 10382839, at *11 ("Simply stated, this Court would disagree with both conclusions in Shalikar.").  The Culver court explained that the beer bottle labels in Shalikar said "absolutely nothing about where the beer was brewed" and therefore the only reason they suggested a Japanese country of origin was because of the use of Japanese script on the packaging.  Id.  The Culver court further explained that Shalikar "fails to explain why the disclaimer on the bottleneck labels – which state in English (which presumably a reasonable consumer would be able to read) that the product was

27

brewed and bottled in Canada – would not be sufficient to dispel the consumers' unexplained belief that the beer was made in Japan." Id. Finally, the Culver court observed that the Shalikar court appeared to have done "what the California and federal courts have said one should not do, namely use a least sophisticated consumer as the template for the reasonable consumer." Id. (internal quotation marks omitted).

In sum, the Court concludes that Plaintiff has failed to plausibly allege that a reasonable consumer would be deceived into believing that the Products are exclusively made in France (and never in Belgium). As set forth above, the label on the Products contains the French phrase "*Bonne Maman*," which translates to "good mommy," (Dkt. 45 at 3), and does not reference or suggest a geographic source, origin, or place of manufacture. The fact that the jar lids use a "Vichy print" pattern, even in combination with the brand name "*Bonne Maman*," is insufficient to plausibly suggest that a reasonable consumer would be misled about the country of origin. Defendant's advertising of the Products is also insufficient, in light of the back label which clearly discloses the address where the specific product was produced. (Id. at 5.) Finally, the *Bonne Maman* Survey is insufficient to salvage Plaintiff's deceptive labeling claims. (Id. at 14.) Accordingly, the Court concludes that Plaintiff has failed to state a claim under the UCL, FAL, or CLRA.

**B.**     **Plaintiff Fails To State A Claim For Intentional Or Negligent Misrepresentation.**

Plaintiff's fourth and fifth claims for relief allege intentional and negligent misrepresentation based on the same allegations of deceptive or misleading labeling and marketing of the Products alleged in the prior claims. (Dkt. 45 at 27-29.) To state a claim for intentional misrepresentation under California law, a plaintiff must establish: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson

28

Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004).  Negligent misrepresentation differs in that it "does not require scienter or intent to defraud." Small v. Fritz Companies, Inc., 30 Cal. 4th 167, 173 (2003).  Instead, a plaintiff must establish that the defendant made the misrepresentation without "reasonable ground for believing it to be true." Id. at 174 (internal quotation marks omitted).

Claims under consumer protection statutes like the UCL, FAL, and CLRA are "substantively distinct" from common law fraud claims like intentional and negligent misrepresentation because a plaintiff asserting a claim under a consumer protection statute "need merely allege that members of the public are likely to be deceived by defendant's conduct," whereas "[a] common law fraud deception must be actually false." In re Actimmune Mktg. Litig., 2009 WL 3740648, at *7 (N.D. Cal. Nov. 6, 2009) (internal quotation marks and brackets omitted), aff'd, 464 F. App'x 651 (9th Cir. 2011); see also Day v. AT & T Corp., 63 Cal. App. 4th 325, 332 (1998) ("[T]he concept encompassed in the phrase 'likely to be deceived' has no relationship to the concept of common law fraud, which is also sometimes referred to as deception.").  Thus, "[a] perfectly true statement couched in such a manner that is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information" may be actionable under consumer protection statutes, but not common law fraud. Day, 63 Cal. App. 4th at 332-33.

Here, the Court concludes that Plaintiff has failed to plausibly allege a false representation as to the Products' country of origin.  As set forth above, neither the French phrase "*Bonne Maman*" on the front labels, the use of "Vichy print" on the top of the lids, nor Defendant's marketing constitutes a representation that the Products are exclusively made in France and never in Belgium.  This is especially true in light of Plaintiff's concession that the back labels of the Products accurately disclose the address where each jar was produced. (Dkt. 45 at 5-6.)  In the absence of a misrepresentation, Plaintiff cannot state a claim for intentional or negligent misrepresentation.  Thus, the Court concludes that Plaintiff has failed to state a

claim for intentional or negligent misrepresentation.

## C.     **Plaintiff Fails To State A Claim for Quasi-Contract, Unjust Enrichment, Or Restitution.**

Plaintiff's sixth claim for relief alleges quasi-contract/unjust enrichment/restitution based on the same allegations of deceptive or misleading labeling and marketing of the Products alleged in the prior claims.  (Dkt. 45 at 30.)  "[I]n California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015) (internal quotation marks omitted).  "However, unjust enrichment and restitution . . . describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." Id. (internal quotation marks omitted).  "The return of that benefit is the remedy typically sought in a quasi-contract cause of action." Id. (internal quotation marks omitted).  "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." Id. (internal quotation marks omitted).

Thus, the Court construes Plaintiff's sixth claim for relief as a cause of action for quasi-contract seeking restitution.  "A quasi-contract is a legal fiction in which the court implies a contract when the defendant obtained a benefit from the plaintiff by fraud, duress, coercion, or similar conduct." Ketayi v. Health Enrollment Grp., 516 F. Supp. 3d 1092, 1139 (S.D. Cal. 2021).  The elements of a cause of action for quasi-contract are: (1) the defendant's receipt of a benefit; and (2) the unjust retention of that benefit at the plaintiff's expense. See MH Pillars Ltd. v. Realini, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017).  However, the Court concludes that Plaintiff has failed to plausibly allege the unjust retention of a benefit at the Plaintiff's expense.  As set forth above, there is no plausible allegation of unjust retention because Defendant's marketing and labeling of the Products does not constitute a representation that the Products are exclusively made in France and

30

never in Belgium.  This is especially true in light of Plaintiff's concession that the back labels of the Products accurately disclose the address where each jar was produced.  (Dkt. 45 at 5-6.)

In the absence of a false representation, Plaintiff cannot state a claim for quasi-contract.  See, e.g., Souter v. Edgewell Pers. Care Co., 542 F. Supp. 3d 1083, 1099 (S.D. Cal. 2021) ("For similar reasons, Plaintiff's claim for quasi-contract, or unjust enrichment, also fails. . . . Here, and as explained above, there was no fraudulent conduct. Both the Efficacy and Skin Efficacy Representations were not fraudulent and misleading in the way that Plaintiff alleges. Absent fraud, Plaintiff has no claim for unjust enrichment.").  Thus, the Court concludes that Plaintiff has failed to state a claim for quasi-contract, unjust enrichment, or restitution.

**D.     The SAC Is Dismissed Without Leave To Amend.**

The Ninth Circuit instructs district courts to grant plaintiffs leave to amend where a defective complaint can be cured.  See Lira v. Herrera, 427 F.3d 1164, 1176 (9th Cir. 2005).  However, "[a] district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith."  Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir. 2010) (internal quotation marks omitted). Moreover, "a district court has broad discretion to grant or deny leave to amend, particularly where the court has already given a plaintiff one or more opportunities to amend his complaint to allege federal claims."  Mir, 646 F.2d at 347; accord U.S. ex rel. Cafasso, 637 F.3d at 1058 ("Further, the district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (internal quotation marks and brackets omitted)).

Here, Plaintiff elected to amend her original Complaint as of right after Defendant filed the first Motion to Dismiss.  (Dkts. 23, 29, 30.)  After Plaintiff filed an FAC, the Court granted Defendant's Motion to Dismiss the FAC with leave to amend.  (Dkt. 44.)  The SAC is substantially similar to the FAC with the differences

31

noted above.  Thus, the Court concludes that Plaintiff had ample opportunity to amend her allegations to state a claim and that further amendment would be futile.  See Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment.").  Once again, this is especially true in light of Plaintiff's concession that the back labels of the Products accurately disclose the address where each jar was produced.  (Dkt. 45 at 5-6.)  Accordingly, the Court concludes that it is appropriate to dismiss the SAC without further leave to amend.

## V.

## ORDER

Consistent with the forgoing, Defendant's Motion to Dismiss is GRANTED WITHOUT FURTHER LEAVE TO AMEND.  (Dkt. 46.)  Defendant's Request for Judicial Notice is GRANTED.  (Dkt. 48.)  The Court will issue a separate Judgment DISMISSING this action WITH PREJUDICE.

IT IS SO ORDERED.

DATED:  May 26, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

32